Jerome E. FISKE, Plaintiff,

v.

CHURCH OF ST. MARY OF THE ANGELS, and the L.C. Whitford Company, Inc., Defendants.

CHURCH OF ST. MARY OF THE ANGELS, and the L.C. Whitford Company, Inc., Third Party Plaintiffs,

v.

FISKE COMPANY II, INC., Third Party Defendant.

No. 90–CV–340E.

United States District Court, W.D. New York.

April 23, 1992.

Burgett & Robbins, Jamestown, N.Y., (Dalton J. Burgett, Mary Speedy Hajdu, of counsel), for plaintiff.

Quinn & McGarry, P.C., Buffalo, N.Y. (David C. Quinn, of counsel), for Church of St. Mary of the Angels.

Michael Pilarz, Buffalo, N.Y., for L.C. Whitford Co., Inc.

Kirchberger & Bender, Buffalo, N.Y. (Thomas W. Bender, of counsel), for Fiske Co. II, Inc.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

The parties filed a consent to proceed before the undersigned on November 4, 1991. This matter is presently before the court pursuant to Defendant L.C. Whitford Company's ("Whitford") motions to amend its answer pursuant to Fed.R.Civ.P. 15(a), for summary judgment dismissing the complaint against Whitford pursuant to Fed. R.Civ.P. 12(b) and 56(b), and for summary judgment against Defendant Fiske Company II ("Fiske II") for indemnification pursuant to Fed.R.Civ.P. 56(a). The matter is also before the court pursuant to Fiske II's motion to amend its answer pursuant to Fed.R.Civ.P. 15(a).

## BACKGROUND

This diversity action, arising out of a construction accident which occurred on February 27, 1989, was filed by Plaintiff, a Pennsylvania resident, on April 6, 1990, asserting causes of action against Defendants Church of St. Mary of the Angels ("St. Mary's"), a New York religious corporation, and Whitford, a New York corporation, for violations of the New York State Labor Law, federal labor law, and negligence. On August 7, 1990, St. Mary's filed a cross-claim against Whitford for contribution and indemnification. On August 22, 1990, St. Mary's filed a third-party complaint against Fiske II, a Pennsylvania corporation and Plaintiff's employer, alleging causes of action for contribution and indemnification. On October 12, 1990, Whitford filed a third-party complaint against Fiske II, alleging causes of action for contribution, common law indemnification and contractual indemnification.

After extensive discovery, Whitford, on December 20, 1991, filed a motion to amend its answer pursuant to Fed.R.Civ.P. 15(a) in order to allege that Pennsylvania law applied to Plaintiff's claim, along with a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b), seeking dismissal of the complaint as against Whitford on the ground that, under Pennsylvania law, Whitford was a statutory employer and, as such, was immune from a lawsuit resulting from an employment accident. On the same day, Whitford also filed a motion for summary judgment pursuant to Fed. R.Civ.P. 56(a) against Fiske II on the ground that the construction contract between Whitford, as general contractor, and Fiske II, as subcontractor, provided that Fiske II was required to indemnify Whitford for any claims arising out of the negligence of Fiske II during its performance under the contract.

On January 21, 1992, Fiske II filed a motion to amend its complaint pursuant to Fed.R.Civ.P. 15(a) for the purpose of alleging that Pennsylvania law applied to this action.

On January 31, 1992, oral argument on the above motions was heard from counsel relative to the matter. Other motions for summary judgment filed by Plaintiff and St. Mary's were deferred pending the outcome of the above mentioned motions.

For the reasons as set forth below, Whitford's motion to amend its answer is DENIED, Fiske II's motion to amend its answer is DENIED, Whitford's motion for summary judgment dismissing it from the case is DENIED, and Whitford's motion for summary judgment for indemnification against Fiske II is DENIED.

## FACTS

Plaintiff, Jerome Fiske, a Pennsylvania resident now 25 years of age, was employed by Fiske II, a Pennsylvania corporation located in Erie, Pennsylvania, at the time of the accident which is the subject of this action.[1] Fiske II, a construction company, is a related company of Fiske Company, Inc., another Pennsylvania corporation established in 1963. See, Exhibit N, Plaintiff's Memorandum of Law, dated January 17, 1992. Fiske II was specifically incorporated for the purpose of handling Fiske Company's construction contracts in New York State and, in fact, designated a New York attorney to act as its agent in New York to receive service of process. See, Exhibit N, Plaintiff's Memorandum of Law, dated January 17, 1992.

On September 23, 1988, Whitford, a New York corporation, entered into, as general contractor, a contract for the rehabilitation of St. Mary's Church in Olean, New York. St. Mary's is a religious corporation organized under the laws of New York. Whitford executed a standard construction contract with St. Mary's which included a provision for indemnification to St. Mary's by Whitford in case of any claim brought against St. Mary's which was caused in whole or in part by the negligence of Whitford or any subcontractor or person hired by Whitford to work on the St. Mary's project. See, Exhibit B, Plaintiff's Memorandum of Law, dated January 17, 1992, General Construction Contract, ¶ 6.3. Whitford was given the responsibility for hiring any necessary subcontractors required to complete its contract with St. Mary's. See, Exhibit B, Affidavit of Thomas W. Bender, dated January 17, 1992.

The original renovation plans of St. Mary's were modified prior to the start of construction in order to lower the cost of the project. See, Exhibit B, Affidavit of Thomas W. Bender, dated January 17, 1992, at p. 62. As a result, Whitford made appropriate modifications to the construction plan, including the use of less scaffolding than was originally called for. See, Exhibit B, Affidavit of Thomas W. Bender, dated January 17, 1992, at p. 38.

On October 20, 1988, Fiske II was hired as a subcontractor by Whitford to perform various renovations and repairs on the exterior roof and steeple areas of St. Mary's Church. The contract between Fiske II and Whitford required Whitford to provide pipe scaffolding, a cross-walk, and the use of a crane to hoist stone to the roof. See, Exhibit D, Plaintiff's Memorandum of Law, dated January 17, 1992, General Construction Contract, ¶ 14.1. Fiske II was to provide any other necessary equipment, including additional scaffolding. See, Exhibit B, Affidavit of Thomas W. Bender, dated January 17, 1992, at p. 54. The contract also provided that Fiske II would indemnify Whitford for any claims arising in whole or in part from negligence on the part of Fiske II. See, Exhibit D, Plaintiff's Memorandum of Law, dated January 17, 1992, General Construction Contract, ¶ 4.6.1.

Fiske II began working at the St. Mary's job site in November, 1988. See, Exhibit E, Plaintiff's Memorandum of Law, dated January 17, 1992. On February 27, 1989, Plaintiff, a steeplejack, was working at the job site at St. Mary's. Plaintiff was on the roof near the steeple area of the church when he apparently lost his footing and fell approximately sixty-five feet to the ground below, sustaining serious physical injuries. At the time of the fall, Plaintiff was not wearing safety equipment.

## DISCUSSION

I. *Amendment of the Answers of Defendants Whitford and Fiske II.*

It is well settled that leave to amend a pleading, pursuant to Fed.R.Civ.P.

---

**1.** The source of the facts as stated are set forth in Plaintiff's complaint, dated April 6, 1990, motion papers and memoranda of law relative to the instant motions supplied by counsel, and representations of counsel at oral argument on January 31, 1991.

15, shall be freely given when justice so requires. *Conley v. Gibson*, 355 U.S. 41, 47–48 n. 9, 78 S.Ct. 99, 103 n. 9, 2 L.Ed.2d 80 (1957); *Ragin v. Harry Macklowe Real Estate Co.*, 126 F.R.D. 475, 478 (S.D.N.Y. 1989). Leave to amend a pleading shall be granted in the court's discretion, absent a showing of undue delay, bad faith, or undue prejudice to the opposing party. *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986). Even where there is no delay, bad faith, or prejudice, leave to amend a pleading should be denied where the claim sought to be added is without merit or futile. *Love v. New York State Department of Environmental Conservation*, 529 F.Supp. 832, 845 (S.D.N.Y.1981).

■ As long as the amendment of the answer does not prejudice a plaintiff, a defendant will not be precluded from asserting additional defenses about which they previously had knowledge. *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986); *Ragin, supra* at 478. A motion to amend an answer to raise additional affirmative defenses may be granted to the extent that the proposed affirmative defenses raise colorable grounds for relief. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Development Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979). In deciding whether a moving party has a colorable ground for relief sufficient to permit the amendment of the answer, the court must make a determination comparable to that required by Fed.R.Civ.P. 12(b)(6) as to whether the proposed amendment states a cognizable defense. *Silberblatt, supra; CBS, Inc. v. Ahern*, 108 F.R.D. 14 (S.D.N.Y.1985). Where a proposed amendment to add an affirmative defense raises a colorable ground for relief, the amendment should be permitted, absent prejudice to the plaintiff. *Ragin, supra* at 478–479.

■ In this case, both Whitford and Fiske II seek to amend their answers to add the affirmative defense that Pennsylvania law applies to the instant action. The court may grant such a motion, in its discretion, if it determines that the addition of such an affirmative defense raises a colorable ground for relief and is not without merit.

Plaintiff argues that as he is suing two New York State corporations, St. Mary's and Whitford, in New York, and as the accident occurred in New York on a New York construction site, New York law should apply. Whitford and Fiske II argue that Pennsylvania law should apply as Plaintiff is a Pennsylvania resident, Plaintiff's employer, Fiske II, is a Pennsylvania corporation, and Plaintiff is covered by worker's compensation insurance in Pennsylvania and accepted such benefits in Pennsylvania following the accident.

■ In a diversity action such as the instant action, because New York is the forum state, New York's choice-of-law rules will determine which state's substantive law should apply. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Machleder v. Diaz*, 801 F.2d 46 (2d Cir.1986). The question is, therefore, not what law the federal court would apply, "but what law the New York courts would apply." *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir.1978), *cert. denied*, 439 U.S. 1034, 99 S.Ct. 638, 639, 58 L.Ed.2d 696 (1978). Under New York's choice-of-law rule, the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied. See, *Index Fund, Inc. v. Insurance Company of North America*, 580 F.2d 1158 (2d Cir.1978); *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972).

■ In *Schultz*, the New York Court of Appeals held, in analyzing a choice-of-law conflict, that the relative interests of the jurisdiction where the parties are domiciled in having its laws apply as opposed to the relative interests of the jurisdiction of the locus of the tort in having its laws apply depend on the particular tort issue in conflict in the case. Where the conflicting rules involve appropriate standards of conduct, the law of the place of the tort "will usually have a predominant, if not exclu-

sive, concern." *Schultz, supra,* 491 N.Y.S.2d at 95, 480 N.E.2d at 684. This is because "the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on [the jurisdiction's law] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance." *Schultz, supra,* at 96, 480 N.E.2d at 684–685. Where the conflicting rules relate to the allocation of losses resulting from tortious conduct, such as rules limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit, the interest of the locus jurisdiction is less important and is outweighed by the relative interests of the parties in having the law of their domiciles apply to the action. *Schultz, supra* at 96, 480 N.E.2d at 685.

▮▮▮▮ In this case, Plaintiff has asserted a cause of action under Section 240 of the New York Labor Law. Section 240 provides as follows:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law § 240 (McKinney 1990). Section 240 of the New York Labor Law requires owners and contractors to provide safe working conditions and imposes absolute liability for a breach of such obligation which has proximately caused an injury. See, *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991). Negligence, if any, of the injured worker is of no consequence. See, *Rocovich, supra.*

*Salsman v. Barden & Robeson Corporation,* 164 A.D.2d 481, 564 N.Y.S.2d 546 (3rd Dep't.1990), was an action brought against a New York general contractor by an injured construction worker, a Pennsylvania resident, following an accident at a Massachusetts construction site. In concluding that the law of the situs of the injury should apply and, therefore, that Labor Law § 240 was not applicable to an accident at a Massachusetts work site, the court held that New York Labor Law § 240 was "first and foremost" a conduct regulating rule. *Salsman, supra,* 564 N.Y.S.2d at 548. The court stated that the legislative purpose of Labor Law § 240 was to place "ultimate responsibility for safety practices at building construction jobs ... on the owner and general contractor" and concluded that this stated purpose clearly established the intent of the legislature to "regulate conduct at construction sites, [and showed that the legislature did] not [have] an intent to regulate the right of recovery or extent of the remedy of workers injured at construction sites." *Salsman, supra,* at 548.

In *Calla v. Shulsky,* 148 A.D.2d 60, 543 N.Y.S.2d 666 (1st Dep't.1989), the court concluded that Labor Law § 240 has both a conduct regulating and loss allocation function. In *Calla,* the plaintiff, a New York resident, was seriously injured from a fall off a ladder at a New Jersey work site. The defendants, with the exception of one party, were all New York residents. Plaintiff sought to apply Section 240 of the New York Labor Law to the action in New Jersey. Pursuant to the court's determination that the Labor Law rule in question was both conduct regulating and loss allocating, the court stated that, in deciding the conflict-of-law question, the issue was whether sufficient contacts existed with New York to enable it to apply New York law as opposed to New Jersey law. Holding that the interest of New York State in protecting workers "who are regularly employed in this jurisdiction and in providing compensation to injured workers who might otherwise become wards of [New York] is paramount" and, that all of the significant contacts were with New York, the court applied New York law. *Calla, supra,* 543 N.Y.S.2d at 669. The court noted that

plaintiff's employer was a New York contractor and that New York requires its employers to give its employees the benefit of laws designed to protect New York employees, and therefore, "the application of [New York] laws defining [the employer's] duty with respect to its employees does not offend the traditional notions of fair play and substantial justice. *Calla, supra* at 670.

■ The application of Labor Law § 240 to construction sites outside of New York was explicitly rejected in *Salsman, supra,* as stated above, and *Brewster v. Baltimore & Ohio Railroad Company,* 167 A.D.2d 908, 562 N.Y.S.2d 277 (4th Dep't 1990), which, in holding that New York statutes imposing standards of worksite conduct on contractors and owners did not apply to a suit brought by a New York worker injured at a job site in Pennsylvania, stated that, "the New York State Legislature is without authority to impose standards of conduct upon contractors, owners, and agents relating to a work site located in a foreign jurisdiction." *Brewster, supra,* 562 N.Y.S.2d at 278. Conversely, New York State has a great interest in imposing safe standards of conduct at New York job sites. See, *Salsman, supra,* 564 N.Y.S.2d at 548. See also, *Zangiacomi v. Saunders,* 714 F.Supp. 658, 664 (S.D.N.Y.1989) (Connecticut law applied to Connecticut home job site, despite New York residency of the homeowner, where "conflicting rules focus[ed] on appropriate standards of conduct as opposed to loss distribution" and parties relied on Connecticut law to govern their conduct); *Whisenhunt v. Sylvania Corporation,* 671 F.Supp. 214, 219 (W.D.N.Y.1987) (New York law held to apply to action brought by family of Arkansas worker killed at job site in New York where the court found that the "dut[y] owed to construction workers in New York [was] governed by New York law, as [was] any duty imposed upon the land owner defendants"). It is obvious from these cases that when faced with choice-of-law issues, New York courts will favor the application of Labor Law § 240 to construction accidents occurring within New York State so as to protect injured workers.

Whitford and Fiske II argue that Pennsylvania law should apply because of Plaintiff's receipt of workers' compensation benefits from a Pennsylvania insurer based on premiums paid by Fiske II. They argue that Plaintiff, having accepted workers' compensation benefits in relation to his injuries from his accident at St. Mary's under Pennsylvania's workers compensation system, must necessarily be subject to the law of Pennsylvania. Defendants claim that workers' compensation laws are loss-allocating laws which require, under *Schultz,* an analysis of the parties' significant contacts with each jurisdiction. Therefore, the state law governing the tort claims at issue in this case against Whitford and St. Mary's, i.e., Section 240 of the New York Labor Law and negligence, and the related indemnification and contribution claims against Whitford and Fiske II, would be analyzed based on the relative interests of each state, New York and Pennsylvania, in having its laws apply.

As Plaintiff is a Pennsylvania resident employed by a Pennsylvania employer who statutorily provided workers' compensation benefits to Plaintiff through a Pennsylvania insurer, the significant contacts are, according to Whitford and Fiske II, with Pennsylvania as opposed to New York. Whitford and Fiske II argue that the analysis used by the courts in *Roach v. McGuire & Bennett, Inc.,* 146 A.D.2d 89, 539 N.Y.S.2d 138 (3rd Dep't.1989), and *Gregory v. Garrett Corporation,* 578 F.Supp. 871 (S.D.N.Y.1983), applies to the instant action.

In *Roach,* a New York resident working for a Pennsylvania subcontractor which had a contract with a New York general contractor sued the general contractor following an accident at a work site in Pennsylvania. The general contractor thereupon filed a third party action against the subcontractor-employer. Prior to filing the action, the plaintiff had accepted workers' compensation benefits in Pennsylvania. The court held, following an appeal from a denial of a summary judgment motion

brought by the defendants, that, despite the residency of the plaintiff, the workers' compensation law of Pennsylvania applied to the action as the lawsuit arose out of an injury to a worker at a Pennsylvania construction site, and that, under Pennsylvania law, workers' compensation benefits were the exclusive remedy of the injured worker against the general contractor. In reaching this conclusion, the court stated that the workers' compensation laws at issue were loss allocating rules and, therefore, pursuant to *Schultz, supra,* the relative interests of the parties domiciles and of the jurisdictions of the locus of the tort had to be evaluated. In particular, the court noted that the Pennsylvania legislature had clearly expressed the state's interest in having its workers' compensation laws apply to any industrial accidents within its borders. *Roach, supra,* 539 N.Y.S.2d at 140. The court also stated that, while acceptance of workers' compensation benefits was a factor to be considered in weighing the states' respective interests, "it [was] not the determinative factor." *Roach, supra* at 141. In fact, the court "note[d] that prior New York case law has held that the rights of the parties are governed by the law under which workers' compensation benefits [were] accepted (see, *Matter of O'Connor,* 21 A.D.2d 333, 250 N.Y.S.2d 696 (2nd Dep't.1964)), but [that] such an approach ignores the interest analysis required by *Babcock* [*v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)] and its progeny." *Roach, supra,* 539 N.Y.S.2d at 141. Given the facts in *Roach,* where plaintiff was hired out of a Pennsylvania union hall, the terms of plaintiff's union's collective bargaining agreement required the employer to provide workers' compensation benefits in the state where the construction site was to be located, plaintiff accepted Pennsylvania workers' compensation benefits, and, significantly, the accident occurred in Pennsylvania, Pennsylvania law was held to apply as the most significant contacts were with Pennsylvania, despite plaintiff's domicile.

In *Gregory,* an action arising out of an airplane crash in New York, the court held that the plaintiffs, having accepted workers' compensation benefits from their employers based in Connecticut and North Carolina were required to accept those states' laws in relation to claims brought against their employers where Connecticut and North Carolina workers' compensation laws granted complete employer immunity from third-party contribution claims.

However, both *Roach* and *Gregory* are distinguishable from the instant case. Neither case involved an accident at a construction site in New York. *Roach* involved a work site in Pennsylvania, and a worker hired out of a Pennsylvania union hall by a Pennsylvania employer. In fact, the only contacts with New York were the New York general contractor and the plaintiff's domicile—all other significant contacts were with Pennsylvania. *Gregory* only involved New York as a result of an airplane crash that fortuitously occurred in New York. In addition, while *Gregory* involved an accident within New York, the conflict-of-law dispute pertained to third party practice and cross-claims by personal representatives of the deceased employees against the employer and its subsidiary, and possible immunities to such actions based on workers' compensation laws. No conduct regulating rules were in dispute in either case and the conflict-of-law analysis necessarily related to loss allocation rules as each party determined which one, if any, was responsible to compensate plaintiffs for their losses. Significantly, however, as to the issue of whether third-party claims, including claims against the third-party tortfeasor employer, should be allowed, the court forcefully concluded that New York law should apply.

In the instant case, Plaintiff's main claim revolves around New York Labor Law § 240, a conduct-regulating statute. Given the New York legislature's strong interest in maintaining safety at work sites located within New York, the fact that Plaintiff received workers' compensation benefits provided by his employer in Pennsylvania is not controlling as to which jurisdiction's laws should apply. See, *Roach, supra* at 141. In contrast to *Gregory,* Whitford is not a third-party defendant as-

serting immunity from other defendants seeking to allocate losses based on workers' compensation laws, rather, Plaintiff is seeking to hold Whitford primarily liable, as the general contractor on the construction project, under Labor Law § 240 which regulates New York work sites and by its terms imposes an absolute and non-delegable duty upon contractors and site owners. See, *Rocovich, supra.* Further, as opposed to *Gregory,* there was nothing fortuitous about the locus of Plaintiff's accident in this case.

■ As to Fiske II, its argument that Fiske II never expected to be held answerable in a New York court for a claim arising under New York law is not believable considering that Fiske II was specifically incorporated for the purpose of handling New York State construction contracts at New York job sites and any New York contracts obtained by Fiske Company, Inc., its controlling affiliate, were referred to Fiske II. That Fiske II may have neglected to adequately insure for its potential Section 240 liability or its contractual or common law indemnity and contribution obligations, is irrelevant to the choice-of-law issue presented. Given the facts of this case, Defendants' expectations should clearly have been that any action arising out of the construction project with St. Mary's would have been asserted in a New York court according to New York law, including Labor Law § 240.

In addition, the policy interest of Pennsylvania does not argue against third party practice against Fiske II by Whitford and St. Mary's. Rather, Pennsylvania's worker's compensation law permits an action by a third party against an employer if liability for damages, contribution or indemnification was expressly provided for in a written contract entered into between the parties alleged to be liable prior to the date of the occurrence giving rise to the action. See, Pa. Workmen's Compensation Law § 481(b) (Purdon 1990). While this law is not as broad as the New York law allowing a party to be impleaded into an action as a third-party tortfeasor, (see N.Y. CPLR § 1401, *et seq.; Dole v. Dow Chemical Co.,*

30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972)), without any restrictions present in the New York Workmen's Compensation statute as opposed to the Pennsylvania statute, in the instant case, the result is the same in either Pennsylvania or New York.

■ The original defendants, Whitford and St. Mary's, impleaded Fiske II as a third-party defendant. Although Plaintiff could not sue Fiske II directly pursuant to either New York's or Pennsylvania's workers' compensation laws which grant an employer immunity from suits brought by employees, Pennsylvania does not limit the ability, under certain conditions as stated above, to bring in the employer as a third-party. The contract between Whitford and Fiske II expressly provided for indemnification and/or contribution by Fiske II to Whitford for any negligent actions by Fiske II resulting in claims brought against Whitford during the term of the construction contract. Even under Pennsylvania law, there is no public policy limiting the ability of a third party to bring an action against an employer or limiting the amount of damages that can be claimed by the third party against an employer and, therefore, a third-party action against Fiske II by Whitford would be allowed. See, *Burke v. Koch Industries,* 744 F.Supp. 677 (E.D.Pa.1990); *Szemanski v. Vulcan Materials Co.,* 272 Pa.Super. 240, 415 A.2d 92 (1979).

■ Under *Schultz,* a conduct regulating rule such as New York Labor Law § 240 is governed by the law of the place of the tort. Therefore, New York law should apply to this action. As a result, an amendment to the answer in this case adding the affirmative defense that Pennsylvania law applies to this action would be without merit.

Acceptance of Whitford's and Fiske II's position would mean that, because of Plaintiff's relationship with Fiske II as a Pennsylvania employer and his acceptance of Pennsylvania benefits, clear New York laws intended to promote construction site safety and generally deter tortious conduct within its borders would be displaced by a

rule of common law negligence and its comparative negligence corrolary. Additionally, their position would, if adopted, result in immunizing from liability the general contractor, Whitford, as a statutory employer pursuant Pennsylvania's Workmen's Compensation Law, and potentially restricting the degree to which two New York resident defendants may seek contribution from a non-resident third-party defendant. Such a result is contrary to the general rule of the Restatement (Second) of Conflict of Laws which provides:

> When the injury [has] occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort. *This is particularly likely to be so with respect to issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues.*

Restatement (Second) of Conflict of Laws § 145 comment (e) (1988) (emphasis added). See also, *Gregory, supra* at 881.

Further, based on the foregoing analysis, it is clear that the New York courts, on the facts presented here, would similarly reject such a result in favor of the application of New York law as to all issues of liability, including that of a third-party employer. This court fails to find any apparent Pennsylvania interest in conferring statutory employer status on Whitford given that the main purpose behind the concept of a "statutory employer" is to ensure that an injured worker receives workers' compensation benefits, a concern fully satisfied in this case.

Even assuming, *arguendo*, that the choice-of-law question should be resolved by interest analysis as a loss allocation rule, New York law would still apply. Here we have a New York general contractor and a New York religious corporation being sued in New York. While the Plaintiff is a Pennsylvania resident, he was hired to work in New York for a Pennsylvania corporation organized specifically to conduct work in New York, and he was injured in New York on a New York job site. Except for the common domicile of Plaintiff and his employer, the third-party defendant, the only other factor involving Pennsylvania is the fact that Plaintiff collects workers' compensation benefits in Pennsylvania. However, there is no evidence in the record that Plaintiff pursued a claim with the Pennsylvania workers' compensation carrier, rather, his employer filed a claim for him. Although this factor is not of overriding significance, the court notes that there is nothing in the record as to whether Plaintiff would have been entitled to collect workers' compensation benefits in New York and, if so, as to whether Plaintiff was given this option or told that not exercising such an option could have possible ramifications against a future action asserted by him. Finally, as discussed above, the public policy of Pennsylvania as to third party liability of employers would not prevent an action by Whitford or St. Mary's against Fiske II.

In *Elston v. Industrial Life Truck Co., Inc.*, 420 Pa. 97, 216 A.2d 318 (1966), the court observed that a third-party tortfeasor who has proximately caused a work-related injury "may not shift a part of his liability onto the [workmen's compensation] 'fund' to which he does not contribute." *Elston, supra,* 216 A.2d at 323. Retaining Whitford in this action upholds this policy interest as it will prevent a shifting of liability onto the Pennsylvania workers' compensation fund for two reasons: (1) there may be a contribution for recoverable damages by Fiske II which is permitted pursuant to § 481(b) of the Pennsylvania Workmen's Compensation statute and, (2) § 671 of the Pennsylvania Workmen's Compensation statute provides a source of reimbursement to the fund based on the Plaintiff's recovery. Applying New York Labor Law § 240 to this action actually furthers the policy interest of Pennsylvania in the viability of its workers' compensation fund as it forces a New York owner and general contractor using Pennsylvania workers to prevent work-related injuries. In addition, any recovery from such application of Section 240 would provide a source of replenishment to the worker's compensation fund other than from the worker's compensation premiums

paid by Pennsylvania employer, based on recovery of workers' compensation benefits paid to an injured worker from the actual tortfeasors.

If Pennsylvania law was held to apply in this action, the statutory purpose of New York Labor Law § 240 would be effectively frustrated as it would relieve the owner and general contractor from a clearly mandated statutory obligation, thereby undercutting the deterrent value of the law. New York's general rule permitting unfettered third-party contribution and indemnity under the principles of *Dole v. Dow, supra,* also carries forward a strong deterrent against tortious conduct which would be defeated by its displacement with a potentially contrary rule. See, *Gregory, supra* at 883. Given New York's strong public policy for regulating safety at construction work sites, the fact that the general contractor and the owner of the building are New York corporations, the fact that the overall business and contractual relationships among the parties were centered in New York, the fact that the accident occurred on a New York job site, coupled with the clear indication that bringing Fiske II into the action as a third party defendant is not against Pennsylvania's policy of protecting employers from actions instituted by employees, and that, in fact, Pennsylvania's worker's compensation fund may be reimbursed if Plaintiff recovers in this action, New York's interests clearly prevail on an interest analysis basis.

As New York law would apply under either an interest analysis or under a law of the place of the tort rule, pleading the affirmative defense that Pennsylvania law applies to this action is without merit. Accordingly, Whitford's and Fiske II's motion to add such an affirmative defense is DENIED.

II. *Whitford's Motion for Summary Judgment Dismissing the Complaint Against Whitford pursuant to Fed. R.Civ.P. 12(b)(6) and 56(b), and for Summary Judgment against Fiske II for indemnification pursuant to Fed. R.Civ.P. 56(a).*

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The burden of establishing the nonexistence of a genuine issue is on the party moving for summary judgment. *Celotex, supra,* 477 U.S. at 331, 106 S.Ct. at 2556. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. at 2556.

Whitford seeks summary judgment dismissing it from the case on the ground that, under Pennsylvania law, it is a statutory employer and therefore, immune from suit from Plaintiff under the Pennsylvania workers' compensation laws. However, as determined in Section I, *infra,* New York law applies to the case, not Pennsylvania law. Under New York workers' compensation laws, a general contractor is not immune from suit as a statutory employer, (see, N.Y. Workmen's Compensation Law, § 1 *et seq.* (McKinney 1990)), and further, under New York Labor Law § 240, a general contractor may be held strictly liable for injuries occurring at a construction site. Therefore, Whitford's motion for summary judgment dismissing it from the case is DENIED.

Whitford also seeks summary judgment against Fiske II pursuant to the terms of an indemnification clause contained in its contract with Fiske II. The indemnification clause at issue provides as follows:

To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited

to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, *but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Subsubcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph.

See, Exhibit D, Plaintiff's Memorandum of Law, dated January 17, 1992, Agreement between Whitford and Fiske II, Paragraph 4.6, dated October 20, 1988 (emphasis added).

Whitford argues that, at the time of the accident, Plaintiff was under the direct supervision and control of Fiske II and that Fiske II had the primary and ultimate responsibility for the safety of Plaintiff. See, Exhibit D, Whitford's Motion for Summary Judgment against Fiske II, dated December 11, 1991, Affidavit of Dwight Allen, Vice President of Whitford. Therefore, Whitford claims, Fiske was responsible for any negligence resulting in the accident and subsequent injuries to Plaintiff and Whitford should be fully indemnified pursuant to the terms of their contract with Fiske II.

Fiske II asserts that the existence of material issues of fact which remain as to the negligence of Whitford, together with the provisions of New York General Obligations Law § 5–322.1(1), precludes summary judgment for Whitford under the theories of either common law or contractual indemnification.

New York General Obligations Law § 5–322.1(1) provides that:

A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building ... purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable....

N.Y. General Obligations Law § 5–322.1(1) (McKinney 1990).

Fiske II argues that the Court of Appeals' interpretation of the General Obligations Law in *Brown v. Two Exchange Plaza Partners,* 76 N.Y.2d 172, 556 N.Y.S.2d 991, 556 N.E.2d 430 (N.Y.1990), precludes a summary judgment determination in favor of Whitford. In *Brown,* the court held an indemnification agreement enforceable where there was no finding of negligence on the part of the general contractor seeking to enforce an indemnification clause against a subcontractor, despite a determination of liability against the general contractor based on Labor Law § 240. In that case, a worker who had fallen off scaffolding erected during the construction of an office building brought an action against the owner of the building and the general contractor on the project. The general contractor impleaded various subcontractors from the project for indemnification pursuant to indemnification clauses contained in their agreements with the general contractor. The subcontractors argued that the indemnification clauses were unenforceable as the finding of liability against the general contractor rendered the clauses unenforceable as against public policy. The court held that the determination of liability against the general contractor under New York Labor Law § 240 was not the equivalent of a finding of negligence barring the enforcement of the indemnification clause at issue, and therefore, Section

5–322.1 of the General Obligations Law's prohibition against indemnifying a contractor for its own negligence was inapplicable. The court noted, however, that a showing of negligence by the general contractor would have rendered the clause unenforceable against the subcontractors to the extent of the general contractor's negligence. In this case, Fiske II asserts that there is a material issue of fact as to whether negligence in whole or in part by Whitford resulted in the accident suffered by Plaintiff.

In arguing that no material fact issue exists as to the question of Whitford's negligence, Whitford supplied evidence to show that, while Whitford provided pipe scaffolding up to a certain height around the exterior wall of the steeple where Plaintiff's accident occurred, Fiske II had the responsibility to provide the necessary scaffolding and equipment for work above and about the scaffolding provided by Whitford. See, Exhibit D, Whitford's Motion for Summary Judgment against Fiske II, dated December 11, 1991, Affidavit of Douglas Cornell, Whitford Project Superintendent for the St. Mary's Project. Cornell also stated in his affidavit that, at the time of the accident, Whitford did not direct, instruct, or control any of the means or methods by which Fiske II performed its work in the area of the accident. See, Exhibit D, Whitford's Motion for Summary Judgment against Fiske II, dated December 11, 1991. Whitford also provided deposition testimony from various Fiske II principals and Plaintiff which stated that Whitford complied with all requests for safety equipment and scaffolding by Fiske II. See, Exhibit E, Whitford's Motion for Summary Judgment against Fiske II, dated December 11, 1991.

Fiske II, in arguing against summary judgment, supplied deposition testimony, in an attempt to establish that Whitford had ultimate responsibility for safety at the work site at St. Mary's. Testimony given by L.C. Whitford, the President of Whitford, established that one person at the construction site, an employee of Whitford, was responsible for overseeing safety measures. See, Exhibit B, Affidavit of Thomas W. Bender, dated January 17, 1992, L.C. Whitford Deposition at p. 34–35, 56–57. Mr. Whitford also acknowledged that the change in contract plans by St. Mary's resulted in the use of less scaffolding than originally envisioned, and he further noted that he was aware that his employee, Doug Cornell, the Superintendent on the job, at times directed Fiske II employees to wear safety belts. L.C. Whitford Deposition at p. 38, 48, 75. There is also evidence that there were instances where Cornell would have safety meetings with the workers from Fiske II and discuss safety aspects of their jobs, including giving recommendations on such safety issues. See, Exhibit C, Affidavit of Thomas W. Bender, dated January 17, 1992, Deposition of Douglas Cornell at p. 133. Cornell also testified that he inspected the work site daily, going up to the roof area three or more times a week, and would discuss with members of the Fiske II work crew problems that he saw with either the quality of work being done or with safety. Cornell Deposition at p. 136–137. Cornell specifically stated that he had the authority to tell the Fiske II employees to wear safety belts, and in fact, on a few occasions gave such a direction. Cornell Deposition at p. 138–139. Following the accident, Cornell told both the Fiske II and Whitford workers to remedy any possible safety hazards at the job site. Cornell Deposition at p. 164.

▬ After reviewing the evidence presented in the record, including affidavits and deposition testimony, the court concludes that material issues of fact remain as to whether the accident resulted from any negligence on the part of Whitford. If negligence on the part of Whitford can be established, Whitford will at least be partially responsible for any damages awarded to Plaintiff as the contractual indemnification clause specifically states that indemnification will only be given to Whitford for damages resulting from the negligence of Fiske II or its subcontractors. In addition, New York General Obligations Law § 5–322.1 would render the indemnification clause unenforceable if it required any payment to Whitford by Fiske II for damages

attributable to Whitford's negligence. For Fiske II to be required to fully indemnify Whitford for any damages which may be awarded to Plaintiff, Whitford must establish that it did not supervise, direct, or control the construction work performed by Fiske II. See, *Smith v. Cassadaga Valley School District,* 178 A.D.2d 955, 578 N.Y.S.2d 747 (4th Dep't.1991) (summary judgment for general contractor on the issue of an indemnification clause contained in a contract with a subcontractor denied as general contractor retained control and sole responsibility for every aspect of the construction project; cross-motion for summary judgment by owner against general contractor on the issue of indemnification granted as there was no evidence of negligence on part of owner as owner's inspector did not supervise or direct the construction work and did not control the use of safety equipment); *Arbusto v. Fordham University,* 160 A.D.2d 191, 554 N.Y.S.2d 2 (1st Dep't.1990) (summary judgment based on contractual indemnification clause properly denied where there was a genuine issue of material fact as to whether defendant exercised control at the construction site); *Schwalm v. County of Monroe,* 158 A.D.2d 994, 550 N.Y.S.2d 970 (4th Dep't. 1990) (granting of summary judgment based on contractual indemnification clause upheld as defendant owner had no control and did not supervise the work site). As the facts are disputed as to the degree of control and supervision Whitford had over the workplace, especially as to the Fiske II workers, summary judgment on this issue is DENIED.

### CONCLUSION

Based on the foregoing analysis, Whitford and Fiske II's motions to amend their answers are DENIED, Whitford's motion for summary judgment dismissing it from the case is DENIED, and Whitford's motion for summary judgment for indemnification against Fiske II is DENIED.

SO ORDERED.