VINCENT CALLA et al., Respondents, v DORIS R. SHULSKY et al., as Trustees under the Will of ELGIN SHULSKY, Deceased, et al., Appellants.

VINCENT CALLA et al., Respondents, v DORIS R. SHULSKY et al., Defendants and Third-Party Plaintiffs. THE CLIMATE SHOP, INC., Third-Party Defendant-Appellant.

First Department, June 29, 1989

**APPEARANCES OF COUNSEL**

*Neal M. Glazer* of counsel *(Warren C. Nitti* with him on the brief; *Harold M. Foster* and *D'Amato & Lynch,* attorneys), for appellants.

*Martin Diennor* of counsel *(Abraham Fuchsberg* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for respondents.

*Steven B. Prystowsky* of counsel *(Eric A. Portuguese* with him on the brief; *Lester Schwab Katz & Dwyer,* attorneys), for third-party defendant-appellant.

RUBIN, J.

Defendants, with the exception of Hector DeJesus, are the owners of Linwood Mall, a shopping center located in Fort Lee, New Jersey. Defendant DeJesus is an employee of defendant Linwood Mall Associates and the only defendant to reside in New Jersey. The other individual defendants are all residents of the State of New York. The corporate defendant, Linwood Mall Associates, is a New York corporation with its principal place of business in New York County. Third-party defendant The Climate Shop, Inc. is a New York corporation, and plaintiff Vincent Calla, who was its employee at the time of the accident, and his wife, plaintiff Angela Calla, are domiciled in New York State. The contract between the owners and The Climate Shop, Inc. was made in this State.

Plaintiff Vincent Calla was seriously injured in a fall from a ladder while performing work on the owners' property as the employee of third-party defendant The Climate Shop, Inc. At issue on this appeal is whether this case is to be governed by the *lex loci delicti* or the law of the common domicile of plaintiffs and the principal defendants. Specifically contested is whether the provisions of section 240 of the Labor Law are controlling. The statute imposes upon an owner of property absolute liability for injury which results from the use of an unsafe scaffolding device and, specifically, from the use of an unsafe ladder. Liability is imposed despite the lack of an employer-employee relationship and in the absence of any supervision, direction and control over the work by the owner *(Haimes v New York Tel. Co.,* 46 NY2d 132). Even where the injured worker has supplied his own ladder and may have been contributorily negligent with respect to its maintenance and use, the Appellate Divisions of the Third and Fourth Departments have ruled that the statute holds the owner responsible *(Harmon v Sager,* 106 AD2d 704 [3d Dept 1984]; *Larson v Herald,* 96 AD2d 1137 [4th Dept 1983]). Likewise, where a worker's injuries resulted from the collapse of a scaffold supplied and erected by his employer, the owner of the premises who had hired the employer to install a water tank is answerable in damages *(Hauff v CLXXXII Via Magna Corp.,* 118 AD2d 485). As we observed in that case, "although [the scaffold] may have collapsed because of faulty construction which plaintiff took part in, contributory negligence is not a defense to a violation of section 240 *(Crawford v Leimzi-*

*der,* 100 AD2d 568)" *(supra,* at 486). The law therefore imposes a duty upon property owners to provide a safe workplace which may not be escaped by delegation of that duty to an independent contractor *(Harmon v Sager, supra; Russin v Picciano & Son,* 78 AD2d 467).

By contrast, defendants argue, a New Jersey property owner owes a duty of ordinary care to provide the worker with a reasonably safe workplace *(Sanna v National Sponge Co.,* 209 NJ Super 60, 506 A2d 1258 [App Div 1986]; *Wolczak v National Elec. Prods. Corp.,* 66 NJ Super 64, 168 A2d 412 [App Div 1961]). The owners' fault must be established, and the worker's contributory negligence is a defense *(Sanna v National Sponge Co., supra; Hardman v Ford Motor Co.,* 70 NJ Super 275, 175 A2d 455 [App Div 1961]). Also, the degree of control and participation by the owner in the performance of the work is a major consideration in assessing his negligence *(Gibilterra v Rosemawr Homes,* 19 NJ 166, 115 A2d 553; *Sanna v National Sponge Co., supra; Wolczak v National Elec. Prods. Corp., supra).* Thus, defendants contend that at issue is the standard to be used in determining the extent of the owners' duty to the injured plaintiff and the criteria to be applied in determining whether that duty has been breached.

The Court of Appeals reviewed conflicts-of-law cases involving common domiciliaries in *Schultz v Boy Scouts* (65 NY2d 189), concluding that interest analysis is the appropriate approach to choice of law in tort actions. The contacts which are significant in defining a State's interest are those relating to the purpose to be served by its law. "Under this formulation," the court stated, "the significant contacts are, almost exclusively, the parties' domicile and the locus of the tort" *(supra,* at 197).

In setting forth the criteria for choosing the law to be applied, the court distinguished between laws which may be said to regulate conduct and those which merely allocate loss: "These decisions also establish that the relative interests of the domicile and locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict in the case. Thus, when the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort 'will usually have a predominant, if not exclusive, concern' *(Babcock v Jackson,* [12 NY2d 473] at p 483; *see,* Restatement [Second] of Conflicts of Law § 145 comment d, at 417-418) because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who

relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction *(see, Babcock v Jackson, supra,* at pp 483-484; Restatement [Second] of Conflict of Laws § 145 comment d, at 417-418; *id.* § 146 comments d, e at 431-433; *see also, Miller v Miller,* 22 NY2d 12, 19 *supra).* Conversely, when the jurisdictions' conflicting rules relate to allocating losses that result from admittedly tortious conduct, as they do here, rules such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit, considerations of the State's admonitory interest and party reliance are less important. Under those circumstances, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary for injuries resulting from the conduct of a codomiciliary that was tortious under the laws of both jurisdictions *(see, Tooker v Lopez,* [24 NY2d 569] at p 576; *Miller v Miller, supra,* at pp 18-19; *Babcock v Jackson, supra,* at p 482). Analysis then favors the jurisdiction of common domicile because of its interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority" (65 NY2d 189, 198, *supra).*

Both plaintiffs and defendant owners cite this passage in support of their respective positions. As indicated above, defendants regard the statute as one which defines the duty which devolves upon an owner of property and, thus, as a provision which regulates conduct. Plaintiffs, however, contend that "the purpose of the statute is economic in nature. By making the owner financially liable for the consequences of another party's actions, the statute discourages the owner from obtaining a contractor merely on the basis of a low price, by providing an economic disincentive, in the form of fixing ultimate liability for the contractor's actions. The purpose of the statute is thus loss allocation."

The explanation for this apparent confusion is that, in fact, the statute performs both functions. It imposes a duty on the owner (and contractor) to exercise oversight to ensure that scaffolding and ladders used by workers are safe. In analyzing the intent of the law, the Court of Appeals observed that "the Legislature apparently decided, as it was within its province to do, that over-all compliance with safety standards would be

achieved by placing primary and inescapable responsibility on owners and general contractors rather than on their subcontractors who, often occupying an inferior economic position, may more readily shortcut on safety unless those with superior interests compel them to protect themselves" *(Haimes v New York Tel. Co.,* 46 NY2d 132, 137, *supra).* Simultaneously, by imposing liability upon an owner who has no control or supervision over the work, and thus who has undertaken no duty with respect to the worker's safety, the statute makes the owner vicariously liable for any negligence by a contractor, subcontractor or even a worker himself *(Hauff v CLXXXII Via Magna Corp., supra; Harmon v Sager, supra).* Vicarious liability merely represents a policy determination to effect a deliberate allocation of risk (Prosser, Torts § 69, at 459 [4th ed 1971]).

The classification of statutes into those which regulate conduct and those which allocate loss may be regarded as somewhat artificial in that the act of shifting financial responsibility often serves to regulate conduct by providing an inducement to exercise oversight in order to avoid the economic disincentive of vicarious liability. As this case well illustrates, a particular statute may defy classification and render unavailing the criteria governing choice of law suggested in *Schultz v Boy Scouts (supra).*

While the act which gave rise to this litigation was a tort and the parties have analyzed choice of law from the perspective of tort law, the statute makes it clear that the provisions of section 240 of the Labor Law become a part of every contract for "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure". The issue may therefore be stated in terms of whether sufficient contacts exist with this forum to warrant application of the *lex loci contractus* in preference to the law of the locus of the tort.

The interest of this State in protecting workers who are regularly employed in this jurisdiction and in providing compensation to injured workers who might otherwise become wards of the State is paramount. The State also has an interest in regulating the conduct of corporations organized according to its laws. However, the interest of the State of New Jersey in the application of its law to events within its borders is presumed, and the *lex loci delicti* is "to be rejected only when it is evident that the situs of the accident is the least of the several factors or influences to which the accident

may be attributed" *(Neumeier v Kuehner,* 31 NY2d 121, 131 [Breitel, J., concurring]).

 ▉ Applying these considerations to the third-party action, it is apparent that all of the significant contacts are with New York. Plaintiffs are domiciled here and the third-party defendant is organized according to the laws of this State. Plaintiff was engaged, presumably within this State, to regularly perform work within its borders. Indeed, Vincent Calla was present at the site of the accident at the direction and for the benefit of his employer. Requiring a New York employer to afford its employees the benefit of laws designed to protect employees in this State "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" *(Tooker v Lopez,* 24 NY2d 569, 585 [Fuld, Ch. J., concurring]). The Climate Shop cannot profess surprise that the laws of this State govern its obligations with respect to its employees. Having availed itself of the privilege of conducting its affairs as a corporation under the protection of New York law, the application of laws defining its duty with respect to the safety of its employees does not offend " 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington,* 326 US 310, 316). Under these circumstances, application of the law of the common domicile is favored because of "its interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction" *(Schultz v Boy Scouts, supra,* 65 NY2d, at 198).

The posture of the action against the defendant owners is not substantially different. While defendants place considerable emphasis on their ownership of land in New Jersey in support of the application of New Jersey law to this action, it adds nothing to the presumption that the *lex loci delicti* will normally apply *(Neumeier v Kuehner, supra,* at 131). The owners are all residents of the State of New York, the corporate defendant is organized pursuant to our law and the contract to engage the services of third-party defendant The Climate Shop, Inc., itself a creature of our law, was entered into in this State. It is not inherently unfair to impose the provisions of the New York Labor Law on defendants' contract with The Climate Shop where the significant contacts of the transaction are all with this State.

There is no merit to the owners' contention that application of New York law will create uncertainty among New Jersey

property owners or "create varying landowner duties depending on the domicile of the visitor to the property." First, New York law is only applicable because a common domicile is shared by the parties. In the absence of a common domicile, the law of the situs of the injury will be applied *(Viera v Uniroyal, Inc.,* 148 AD2d 349). Furthermore, to apply New York law to a given transaction, it must have "a sufficient contact with this forum to preclude application of the *lex loci delicti commissi* in favor of the *lex loci contractus" (Regional Import & Exporting Trucking Co. v North Riv. Ins. Co.,* 149 AD2d 361). Finally, under the facts of this case, the law in conflict will be applied to parties who are all residents of the forum State, rendering nominal the interest of the State in which the injury occurred. Were the law applicable to a resident of New Jersey, the interest of that State in the application of its law might well dictate a contrary result.

Accordingly, the order of the Supreme Court, New York County (Francis N. Pecora, J.), entered March 9, 1988, which denied defendants' motion to dismiss the second cause of action, alleging a violation of the New York Labor Law on the ground that it fails to state a cause of action, should be affirmed, without costs. The order of the same court, entered October 25, 1988, which denied the third-party defendant's motion to dismiss the second cause of action on the same ground, should be affirmed, without costs.

KUPFERMAN, J. P., ROSS, MILONAS and WALLACH, JJ., concur.

Orders, Supreme Court, New York County, entered on March 9, 1988 and October 25, 1988, respectively, unanimously affirmed, without costs and without disbursements.