[603 NYS2d 31]

Marcello Zangiacomi, Plaintiff, v John Hood, Defendant and Third-Party Plaintiff, et al., Third-Party Defendant.

Marcello Zangiacomi, Appellant, v Coke A. Saunders, Respondent.

First Department, October 19, 1993

APPEARANCES OF COUNSEL

*Kevin Concagh, P. C.,* of counsel, New York City *(Steven Loren* with him on the brief), for appellant.

*Robert E. Quirk* of counsel, New York City *(Quirk & Bakalor, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

By "CONSTRUCTION AGREEMENT", dated June 17, 1987, defendant Coke Anne Saunders, a New York resident and architect

and the owner of a one-family house located in Westport, Connecticut, hired John Hood, also a New York resident, to do the construction work in the renovation of the house in accordance with plans and specifications prepared by her. The final decision on materials and design was to be made by Saunders with recommendations by Hood. On the other hand, Hood was to make the final decision regarding scheduling and methods of construction within the specifications provided by Saunders and after consultation with her. The cost of the construction was not to exceed $150,000, unless the parties, after concluding that limiting the cost of the renovation to that sum would likely diminish the resale value of the property, agreed otherwise. Hood was to be paid $18,000 overall in specified monthly amounts. If, due to causes for which Hood was not responsible, construction was not completed within four months, as contemplated, he would be paid an additional $4,500 per month. In addition, Hood was to be paid 10% of Saunders' net profit, as that term is defined in the agreement, from the sale of the property. Saunders thereafter entered into a written agreement with Peter Lyden for the installation of new roofing and gutters at the Westport house, with Lyden supplying all the materials and labor. She also hired the plumber, electrician, carpenters and painters.

As the work progressed, Hood would report, on average, once a day to Saunders, who visited the site two or three times a week for two months, "[w]ork[ing] with [Hood], sketching out details, how to build cabinetry, or I said where to locate a window, pull up this floor and see what the floor looks like underneath it." At this point, she was, as she expressed it, "essentially supervising th[e] renovation." Once the detail drawings were done, Saunders did not visit the site as often, although she continued to go there once a week, taking payroll checks or "to pay any of these contractors that were doing the work there." Hood would tell her who should be paid and indicate the amount. Saunders would "look at the state of the work, how far along they had gotten, if there was one coat of paint or three coats of paint, or I would say they need to put another coat of paint to the vertical boards, or I might say nothing."

On November 10, 1987, during a rainstorm, plaintiff, a New York resident and employee of Lyden, who was spreading tarpaulin on the unfinished portion of the pitched roof of Saunders' house, slipped and fell approximately 20 feet to a paved parking area below, sustaining injuries. He originally

brought a personal injury action against Saunders only in the United States District Court for the Southern District of New York. In that action, Saunders had taken the position that Hood was her employee. In her deposition two years later, however, she insisted that Hood was not her employee, thus necessitating the addition of Hood as a defendant. Due to a recent amendment of the diversity statute, however, plaintiff was unable to obtain jurisdiction over Hood and subsequently voluntarily discontinued that action, without prejudice. Thereafter, plaintiff commenced two actions, now consolidated, in the Supreme Court, New York County, one against Hood, who impleaded Saunders, and the other against Saunders, alleging, *inter alia,* the absence of proper safety equipment while working on the roof, in violation of New York Labor Law § 240.

When plaintiff moved, after joinder of issue, for a trial preference on the grounds of financial hardship and the need for immediate medical care, Saunders cross-moved for summary judgment dismissing the complaint as well as Hood's third-party complaint against her, alleging that under the law of either Connecticut, which, she argued, should be applied to this action, or New York, she cannot be held liable since she neither directed nor controlled the work out of which plaintiff's injury arose. Plaintiff opposed the cross motion on the ground that Saunders controlled the renovation and that, in any event, under the law of New York, Labor Law § 240's exemption for the owners of one- and two-family houses was inapplicable since the renovation was for a commercial purpose. In opposition to Saunders' cross motion, Hood claimed, albeit in conclusory terms, to be an employee of Saunders and stated that, to the extent he controlled the work at the job site, he did so as the agent of Saunders, the owner, architect and general contractor.

■ The IAS Court avoided the choice of law question, finding the practical effect of Connecticut and New York law to be the same since, under either, the crucial question is whether Saunders controlled the work at the job site. On that score, the court found that plaintiff failed to produce sufficient evidence to create an issue of fact and granted summary judgment dismissing the complaint against Saunders,* noting

---

* Although Saunders moved for summary judgment in both actions, the IAS Court limited its grant to the action in which she was the defendant, granting leave to Saunders to move to dismiss the third-party complaint in the consolidated action.

that, absent a showing that she controlled or directed the work, Labor Law § 240's strict liability rule did not apply since Saunders was entitled to the protection of the exemption therefrom for owners of one- and two-family homes. This appeal followed. We reverse.

■ As noted, under the IAS Court's analysis it was unnecessary for purposes of this motion to decide whether New York or Connecticut law applies to the action. As we view the case, however, the question of whether Saunders is entitled to a dismissal at this juncture under Connecticut law or under the statutory exemption for one- and two-family homeowners from New York's strict liability standard under Labor Law § 240 does not, as the IAS Court held, turn on the resolution of a common issue, i.e., Saunders' control over the work. Indeed, for purposes of deciding whether Labor Law § 240 applies, that issue need not be reached at all since Saunders held the property solely for commercial purposes and is therefore not entitled to the statutory exemption. *(See, Van Amerogen v Donnini,* 78 NY2d 880.) Thus, under New York law, the question of whether Saunders directed or controlled the work is rendered irrelevant. As the case has been presented to us, Saunders may be subject to liability under either New York Labor Law § 240 because she held the property for a commercial use, or, if she controlled or supervised the work, under the law of Connecticut. *(Minton v Krish,* 1993 WL 119761 [Conn Super Ct, Waterbury Jud Dist]; *see also, Calkins v Liggett Drug Co.,* 124 Conn 14, 197 A 693; *Wright v Coe & Anderson,* 156 Conn 145, 239 A2d 493, 498.) It is thus unnecessary to reach the question of which State's law applies; Saunders is not entitled to summary judgment dismissal under the laws of either.

Nor, given the state of this record, can we dispose of the choice of law issue. In *Calla v Shulsky* (148 AD2d 60), this Court gave extraterritorial effect to Labor Law § 240 where all the parties, with the exception of one defendant, an employee of one of the owner defendants, were New York domiciliaries and the significant contacts of the transaction all occurred within this State. On the other hand, it should be noted, the Third Department, in *Salsman v Barden & Robeson Corp.* (164 AD2d 481), and the Fourth Department, in *Brewster v Baltimore & Ohio R. R. Co.* (167 AD2d 908), have explicitly re-

jected the notion that Labor Law § 240 is applicable to a construction site accident outside the State of New York. The circumstances in *Calla* were unusual and, as *Calla* itself recognized, the case has limited application (148 AD2d, *supra,* at 66-67); its precedential value should be restricted to a precisely similar fact pattern. There are factual distinctions immediately apparent here. For instance, unlike in *Calla,* it does not appear that the particular contract under which plaintiff, an employee of a subcontractor, performed was executed in New York or that the subcontractor was a New York resident. In any event, the record, as noted, is not sufficiently developed to resolve the issue.

As originally enacted, Labor Law § 240 imposed a strict liability rule on owners and contractors even in the absence of any supervision or control on their part. *(Haimes v New York Tel. Co.,* 46 NY2d 132; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290, *rearg denied* 45 NY2d 776.) In 1980, the Legislature amended section 240 (1) (L 1980, ch 670, § 1) to remedy the harshness of the strict liability rule by exempting "owners of one and two-family dwellings" who contract for and do not direct or control the contractor's work. An owner of a one-family dwelling who uses the property solely for commercial purposes is not, however, entitled to the statutory exemption. *(Van Amerogen v Donnini, supra,* 78 NY2d 880.)

In rejecting plaintiff's argument that section 240's exemption for one- and two-family homeowners should not apply because Saunders was using the premises solely for commercial purposes, the IAS Court relied on a line of cases, including the Third Department's decision in *Van Amerogen v Donnini* (156 AD2d 103), which found that circumstance unavailing. The reasoning underlying those cases had, however, been rejected by the Court of Appeals; in its reversal of *Van Amerogen* (78 NY2d 880, 883, *supra),* the Court held that the owners of a single-family dwelling who did not occupy the premises themselves but held it solely for commercial gain, renting it to college students, "are quite unlike '[the] homeowner who hires someone to paint his own living-room ceiling [who should be accorded the statutory exemption from strict liability]' *(Cannon v Putnam,* 76 NY2d 644, 650, *supra),* and are not within the class of persons the Legislature sought to exempt from the strict liability provisions of Labor Law §§ 240 and 241."

In *Lombardi v Stout* (80 NY2d 290, 296), decided after the IAS Court's decision herein, the Court of Appeals reaffirmed

its holding in *Van Amerogen (supra),* stating that the one- and two-family homeowner exemption "was not intended to insulate from liability owners who use their one- or two-family houses purely for commercial purposes". Rejecting the argument that the premises were vacant at the time of the accident and previously had been a one-family residence, the Court specifically found that "[t]he exception is not applicable * * * if [the owner's] purpose in making renovations was to prepare the house for commercial rental." *(Supra,* at 297.)

■ Here, Saunders offers no facts which suggest that the renovation was anything but a commercial venture; the evidence clearly shows that the house was being renovated for resale, an essentially commercial purpose, and was, in fact, placed on the market for six months shortly after the accident. This is not the case of a resident owner of a one- or two-family house renovating in order to render the house marketable or to fetch a better price on resale. According to Saunders, at the time of the accident she had never resided in the house. The construction agreement between Saunders and Hood clearly shows that the renovations were part of a plan to sell the property as soon as construction was completed. In fact, the contract expressly provided that Hood, the contractor, was to receive 10% of the net profit on its sale. Thus, since the property was being held for commercial purposes, it was not necessary to show supervision and control of the work by Saunders, the owner, in order to take this case out of Labor Law § 240's exemption for one- and two-family homes.

■ Under Connecticut law, however, control of the work must be established before a plaintiff can recover on a theory of common-law negligence. *(Minton v Krish, supra,* 1993 WL 119761; *see also, Calkins v Liggett Drug Co., supra,* 124 Conn 14, 197 A 693; *Wright v Coe & Anderson, supra,* 156 Conn 145, 239 A2d 493, 498.)* In that regard, we believe that this record reveals an issue of fact as to whether Saunders did, in fact, exercise such control. Saunders, a commercial investor and architect, who provided all the plans for the house's renovation, had a much greater role than that of a curious or interested homeowner. As noted, for the first two months of the renovation she was at the Westport house two or three times a week "[w]ork[ing] with [Hood] sketching out details, how to build cabinetry, or I said where to locate a window, pull up this floor and see what the floor looks like underneath it." She was at that point, as she testified, "essentially supervising th[e] renovation." There is, of course, also Hood's affida-

vit to be considered. While it is substantially conclusory in effect, Hood states that Saunders controlled "all the work." Given such a record, we do not believe that summary judgment was warranted on the issue of control. In that regard, we make no determination at this point as to whether plaintiff need show only that Saunders controlled the work site or whether plaintiff must show that Saunders specifically directed him or his employer, Lyden, in the manner in which this particular work was to be performed.

■ Finally, we reject Saunders' argument that, as a result of a United States District Court ruling that New York law does not apply, we are bound by the doctrine of collateral estoppel from considering the application of Labor Law § 240 to this accident. For collateral estoppel to apply, there must be a "valid and final judgment." *(Matter of McGrath v Gold,* 36 NY2d 406, 411.) The District Court determination was a nonappealable interlocutory order *(see,* 28 USC § 1291), which distinguishes the instant case from *Murray v National Broadcasting Co.* (178 AD2d 157), upon which Saunders relies. There, the dismissal of the Federal action was affirmed and both a rehearing application and petition for a writ of certiorari denied before the State action was even commenced. Thus, the dismissal was given res judicata effect in the State court action. That is not the case here. Plaintiff's discontinuance, without prejudice, of the Federal action was unrelated to the adverse determination of his summary judgment motion and was compelled by his inability to obtain jurisdiction over all the necessary parties in that action. Thus, plaintiff could not obtain review of the adverse District Court determination and he should not be bound by it. (Restatement [Second] of Judgments § 28 [1].)

■ One other matter remains for consideration. The IAS Court, in light of its dismissal of the complaint, denied, as moot, plaintiff's motion for a trial preference. As set forth in his motion papers, plaintiff, 20 years of age at the time of the accident, has suffered permanent injuries. He requires a total hip replacement but is without funds or medical coverage to pay for the procedure. Any extended delay will only worsen his condition. His medical bills already exceed $100,000. He does not receive workers' compensation benefits because neither Saunders, Hood nor his employer, Lyden, secured such coverage. In light of plaintiff's declining physical condition and impecunious state, he should be granted a preference.

Accordingly, the order of the Supreme Court, New York

County (Edward J. Greenfield, J.), entered April 23, 1992, which denied plaintiff's motion for a trial preference and granted defendant Saunders' cross motion for summary judgment dismissing the complaint in the action bearing index No. 10654/91, should be reversed, on the law, without costs or disbursements, the motion granted and the cross motion denied.

Motion for reargument or, in the alternative, for leave to appeal to the Court of Appeals denied wherein leave to appeal to the Court of Appeals is sought, and granted wherein reargument is sought and, upon reargument, the decision and order of this Court entered on July 6, 1993 (192 AD2d 56) is recalled and vacated and a new opinion substituted therefor.

Ross, Kassal and Nardelli, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 17, 1992, which, *inter alia,* denied plaintiff's motion for a trial preference and granted defendant Saunders' cross motion for summary judgment dismissing the complaint, reversed, on the law, without costs or disbursements, the motion granted and the cross motion denied.

Motion for reargument or, in the alternative, for leave to appeal to the Court of Appeals denied wherein leave to appeal to the Court of Appeals is sought, and granted wherein reargument is sought and, upon reargument, the decision and order of this Court entered on July 6, 1993 (192 AD2d 56) is recalled and vacated and a new opinion substituted therefor.