[615 NYS2d 668]

Jose Aviles et al., Respondents, v Port Authority of New York and New Jersey, Appellant.

First Department, August 18, 1994

## APPEARANCES OF COUNSEL

*Robert P. Pagano* of counsel, New York City *(Blaze D. Waleski* on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for appellant.

*Arthur N. Hyman* of counsel, New York City *(Nason & Cohen, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

WALLACH, J.

Plaintiff Jose Aviles, a New York domiciliary, allegedly sustained personal injury when he fell from a ladder while working at Newark International Airport, which is operated by defendant, a bistate agency. New York's "scaffolding law" (Labor Law § 240) imposes strict or "absolute" liability for negligence causing injury on an elevated worksite surface *(Zimmer v Chemung County Performing Arts,* 65 NY2d 513), whereas New Jersey common law simply requires the exercise of ordinary care in providing a reasonably safe place to work *(Sanna v National Sponge Co.,* 209 NJ Super 60, 506 A2d 1258). The question is whether New York or New Jersey law should apply.

Under New York's choice of law rules, if the plaintiff and the defendant are domiciled in different States, the law of the situs of the injury generally applies *(Neumeier v Kuehner,* 31 NY2d 121). On the other hand, where the parties share a common State of domicile, an analysis will determine which State's law (that of the common domicile or that of the situs) has the predominant interest *(see, Schultz v Boy Scouts,* 65 NY2d 189, 198).

Specifically, where the laws in conflict deal with regulation of standards of conduct, the *lex loci delicti* will generally predominate, in the interest of deferring to that jurisdiction for protection of reasonable expectations with regard to similar future conduct. But where the conflicting laws deal with allocation of loss among parties, the law of the common domicile, governing enforcement of such judgments and obligations, is paramount *(Viera v Uniroyal, Inc.,* 142 Misc 2d 1099, *affd* 148 AD2d 349).

Following this scheme, if defendant is domiciled in New

Jersey, as it claims, then New Jersey, as the law of the situs, would govern. But if defendant is a New York corporation, sharing that State of domicile with plaintiffs, then the question arises whether the law governing liability for negligence at the worksite is a rule of conduct (in which case New Jersey law would apply), or is concerned primarily with loss allocation (in which case the law of the New York forum would govern). Only in the last case, then, would section 240, with its absolute liability, apply. Thus, the first question that must be answered is whether defendant is a domiciliary of New York or of New Jersey. Defendant argues the latter, thus invoking the less stringent law of the situs. Plaintiffs call that argument specious.

■ At the very least, defendant has dual domicile. Defendant can no more argue that it is exclusively a New Jersey domiciliary than can plaintiffs argue that defendant is exclusively a New York domiciliary. Plaintiffs' denomination of defendant as a New York domiciliary thus cannot be effectively controverted.

In light of this common denominator, the interest analysis is thus invoked, raising the second question—whether section 240, establishing liability for negligence at the worksite, is a rule of conduct (in which case it impinges upon, and must bow to, New Jersey laws in conflict), or whether it is a loss-allocation rule (which can be applied in this case).

In *Calla v Shulsky* (148 AD2d 60), this Court held that section 240 performed *both* functions, and thus the simple interest analysis based on rules-of-conduct versus allocation-of-loss should be replaced by a balancing of significant contacts, which would include *lex loci contractus* as well as *lex loci delicti*. Inasmuch as most of those contacts in *Calla* were in New York, we held it would not be inherently unfair to impose the more stringent requirements of New York law on performance of this essentially New York contract in New Jersey, the theory being that New York has an interest in affording its broader legal protection to its own citizens even outside our borders.

■ Our decision in *Calla* was thus based upon the determination that section 240 serves two functions at once—it establishes a safety standard of worksite conduct, and it also provides for allocation of loss. But even though the statute serves such a dual function at various times, our analysis should focus on which of those functions is applicable to the

specific cause of action here. This distinction was recognized in *Salsman v Barden & Robeson Corp.* (164 AD2d 481). There a Pennsylvania construction worker, injured at a Massachusetts worksite, sued the New York general contractor. The Third Department held that the divergence of domicile mandated application of the law of the situs, requiring dismissal of a cause of action based upon section 240. But the New York contractor in that case brought a third-party action against the plaintiff's New York employer. The commonality of domicile in the third-party action brought into play the interest analysis. Even though the court viewed section 240 as "first and foremost [a] conduct regulating" rule *(Salsman, supra,* at 485; *see also, Brewster v Baltimore & Ohio R. R. Co.,* 167 AD2d 908), the third-party complaint, insofar as it sought contribution and indemnification, was purely in the nature of allocating losses. Because the statute served a loss-allocation function in this respect, the Third Department upheld the New York scaffolding law causes of action in the third-party complaint.

Here the natural sentiment toward extraterritorial application of Labor Law § 240 must be strictly limited by choice of law rules *(see, Zangiacomi v Hood,* 193 AD2d 188, 192-193). In this case, involving parties of a common domiciliary State, the interest analysis leads to the inevitable conclusion that plaintiffs seek to apply New York's scaffolding law as a rule of conduct. (Loss allocation is not an issue in light of the solitary defendant.) That being the case, choice of law rules mandate application of the less stringent law of the situs. The complaint, which is based solely upon a violation of New York's scaffolding law, should have been dismissed.

Accordingly, the order of Supreme Court, New York County (Walter M. Schackman, J.), entered April 7, 1993, should be reversed, on the law, without costs, and the complaint dismissed. The clerk is directed to enter judgment in favor of defendant dismissing the complaint.

RUBIN, J. (dissenting). The majority in this case, following the Appellate Division, Third Department's rationale in *Salsman v Barden & Robeson Corp.* (164 AD2d 481), adopts a position which denies the protection of the Labor Law to a resident of this State, injured in the course of his employment with a New York company, while performing work on property under the control and management of a New York domiciliary. Anomalously, this rationale is adopted for the

purpose of extending the protection of the Labor Law to a nonresident of this State, employed by a foreign corporation, conducting its operations under the laws of a jurisdiction which has not chosen to enact equivalent legislation for the benefit of its own residents. Such rote application of choice-of-law principles perpetrates a disservice to the workers of this State, undermines the Legislature's intent to provide compensation for job-related injuries and threatens to burden the people of this State with the cost of caring for disabled workers and their families.

The position taken by the majority herein is contrary to our holding in *Calla v Shulsky* (148 AD2d 60), which this Court confirmed in *Viera v Uniroyal, Inc.* (142 Misc 2d 1099, *affd* 148 AD2d 349), a case which we affirmed for the reasons stated in the well-reasoned opinion by Justice Stecher. The majority adopts the view held by the Appellate Division, Third Department, which equates vicarious liability with tortious conduct, stating that "Labor Law §§ 240 and 241 are first and foremost conduct regulating rules" *(Salsman v Barden & Robeson Corp. (supra,* at 485). Reasoning that the jurisdiction of the situs of a tort has exclusive interest in regulating conduct within its borders, the majority is thus led to the inescapable conclusion that the *lex loci delicti* must be applied to the facts of this case *(Schultz v Boy Scouts,* 65 NY2d 189, 198). They conclude that to apply Labor Law § 240 (1) in this case would result in giving "extraterritorial application" to its provisions *(see also, Zangiacomi v Hood,* 193 AD2d 188, 192-193 [Sullivan, J.]).

It should be noted that, in finding a prohibited extraterritorial reach of the Labor Law, these decisions do not distinguish between provisions which require negligence to be established *(e.g.,* §§ 200, 241 [6]) and section 240 (1), which is a strict liability provision. In any event, I do not share the view that Labor Law § 240 (1) is a provision primarily calculated to regulate conduct. Furthermore, I deem it inappropriate to ignore the contractual nature of the relationships between the worker, employer, contractor and property owner in determining the applicable law to be applied. Finally, I perceive no interest of the State of New Jersey that would be encroached by application of Labor Law § 240 (1) to the circumstances presented in this case.

This appeal presents the question, first addressed by this Court in *Calla v Shulsky (supra),* of whether Labor Law § 240 (1) may be invoked by a New York worker who is sent by a New York employer to perform work in another State for a

property owner that is also a New York domiciliary. Choice of law in this area is complicated both by the dual nature of the statute, providing for loss allocation as well as conduct regulation, and by the contractual nature of the relationships between the worker, his employer and the defendant.

In the case on appeal, plaintiff Jose Aviles, a resident of Queens County, was sent by his employer American Rolling Door, located in Bronx County, to perform work at Newark International Airport, New Jersey, a facility under the operation and control of defendant Port Authority. The Port Authority of New York and New Jersey, as its name implies, is a bistate agency, domiciled in both New York and New Jersey, which maintains an office in New York County. Plaintiff fell from a ladder while working at Building No. 79 at the airport and asserts a single cause of action against the Port Authority predicated on a breach of Labor Law §§ 200 and 240.

As a threshold matter, liabilility under Labor Law § 200 is adjudged under standards of ordinary negligence. In his opposition to defendant's motion to dismiss the complaint, plaintiff does not contend that the Port Authority exercised any control over the work or provided a ladder, scaffolding or other safety device. His opposition is based solely on the argument that defendant is liable for his injuries pursuant to Labor Law § 240. The `question presented is therefore identical to that raised in *Calla v Shulsky (supra)*.

Although the Authority asserts its New Jersey residence in the attempt to defeat common domicile with plaintiff, it is clear that, by statute, the Port Authority is considered to be a resident of "both" jurisdictions, not "either" jurisdiction (McKinney's Uncons Laws of NY § 7106; L 1950, ch 301, § 6) and defendant's brief concedes as much. It would offend a fundamental policy consideration underlying choice of law theory to permit a defendant to elect the law to be applied in a given case by asserting status as a domiciliary of one State or another, as it deemed advantageous *(Schultz v Boy Scouts,* at 201, *supra)*. For the purposes of this litigation, the Authority shares a common domicile with plaintiff.

The facts of this case are therefore indistinguishable from *Calla v Shulsky (supra)*, which is in all respects dispositive of the issue presented. *Calla,* however, seems to have been neither well received nor well understood. In *Brewster v Baltimore & Ohio R. R. Co.* (167 AD2d 908), the Appellate Division, Fourth Department, declined to apply New York law

to an accident occurring outside the State, reasoning that New York's Legislature lacks authority to regulate conduct in foreign jurisdictions. Although it is not clear that *Calla* was even pertinent to the facts before it, the Court expressly rejected the result reached in the case. Likewise, in *Salsman v Barden & Robeson Corp.* (164 AD2d 481, *supra*), a matter to which *Calla* is clearly not applicable—due to the absence of a common domicile between employer and employee *(Neumeier v Kuehner*, 31 NY2d 121, 128; *see also, Schultz v Boy Scouts, supra*, at 198-199)—the Appellate Division, Third Department (at 486), expressed its dissatisfaction with the rationale of *Calla* because it would preclude "applicability of Labor Law §§ 240 and 241 to actions arising out of accidents at New York construction sites when the principal parties are commonly domiciled in another State."

While the New York statute might not be applicable under the rationale of *Calla*, this is not the inevitable result. Moreover, there is ample precedent for refusing to apply the law of this State to actions between parties commonly domiciled in another jurisdiction. In *Schultz v Boy Scouts (supra)*, upon which the Third Department relies in *Salsman*, the Court of Appeals declined to apply New York law to defeat the charitable immunity of a New Jersey resident who brought an action against a New Jersey defendant arising out of tortious conduct that took place in New York. The Court found "persuasive reasons for consistently applying the law of the parties' common domicile" (65 NY2d, at 201, *supra*). The *Salsman* Court's resistance to such an outcome clearly stems from its conclusion that "Labor Law §§ 240 and 241 are first and foremost conduct regulating rules" (164 AD2d, at 485, *supra*), causing it to inflexibly apply the law of the situs of the tort *(Schultz v Boy Scouts, supra*, at 198), despite long-standing criticism that *"lex loci delictus* is unsoundly applied if it is done indiscriminately and without exception" *(Neumeier v Kuehner, supra*, at 131 [Breitel, J., concurring], citing *Babcock v Jackson*, 12 NY2d 473).

While I would not reach a contrary conclusion on any issue decided in *Salsman*, I take issue with the view that Labor Law § 240 (1) has, as its primary objective, the regulation of conduct. As *Calla* noted, because it imposes vicarious liability irrespective of fault, this provision cannot be classified as one which wholly, or even primarily, regulates conduct (148 AD2d, at 65, *supra; Viera v Uniroyal, Inc.*, 142 Misc 2d, at 1105, *supra*). As stated in *Brown v Two Exch. Plaza Partners* (76

NY2d 172, 179): "Liability is not predicated on fault: it is imputed to the owner or contractor by statute and attaches irrespective of whether due care was exercised and without reference to principles of negligence". But, as *Calla* recognized, "shifting financial responsibility often serves to regulate conduct by providing an inducement to exercise oversight in order to avoid the economic disincentive of vicarious liability" (148 AD2d, at 65, *supra).*

While Labor Law § 240 (1) may have an ultimate influence on conduct, its immediate effect is to allocate to an owner or contractor, irrespective of fault, a portion of the liability for loss resulting from injury to a worker as the result of a fall. As such, there is no reason to distinguish it "from other loss-distributing rules because they all share the characteristic of being postevent remedial rules designed to allocate the burden of losses resulting from tortious conduct in which the jurisdiction of the parties' common domicile has a paramount interest" *(Schultz v Boy Scouts, supra,* at 199). Significantly, the liability sought to be imposed by plaintiff on the Port Authority does not derive from any act or omission on defendant's part, but attaches as a result of the vicarious liability imposed by this provision.

Allowing, as in *Calla,* that Labor Law § 240 (1) has a significant effect on conduct so as to warrant consideration of the competing interests of New York and New Jersey in having its respective law applied to this case, the analysis cannot be based exclusively on the conduct to be regulated by tort law but must encompass the interest of each jurisdiction in regulating the conduct of businesses which operate under the benefit and protection of its laws. The cases applying choice of law principles to Labor Law § 240 generally focus entirely on the tortious conduct resulting in injury and ignore the contractual aspect of the employer-employee relationship. From the perspective of interest analysis, this approach is too limited, both in giving recognition to the interests of competing jurisdictions in the law to be applied and in fulfilling the reasonable expectations of the parties to the employment contract. As the Court of Appeals recognized in *Schultz v Boy Scouts (supra,* at 198), one reason to apply the law of the locus of the tort is to uphold its "interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct". Where the parties, and particularly the employee for whose benefit the Labor Law exists, expect that the employer-employee relationship will be governed by

the law of the State in which the employee's services were retained and where he regularly works, the *lex loci contractus* assumes an importance as great or greater than the *lex loci delicti.*

Consistent with the contractual nature of employment, the law upon which parties can be expected to rely to govern their relationship is either the law of their common domicile or the law of the jurisdiction in which the employer engaged the services of the employee. In *Calla v Shulsky* (148 AD2d 60, *supra),* Vincent Calla was engaged in New York, by a New York corporation, to regularly perform work in this State. It is eminently reasonable that Mr. Calla expected his employment to be governed by New York law, even if it happened to take him out-of-State on his employer's behalf. The holding of *Calla v Shulsky* is simply that, where the particular party defendant and the injured employee share a common domicile, the law which governs their relationship is the law of the jurisdiction in which the employee's services were engaged, that is, the *lex loci contractus.*

It should be noted that the outcome in *Calla* does not violate the interest of the State of New Jersey, which has imposed no absolute liability equivalent to Labor Law § 240 (1) to compensate workers for injury resulting from a fall at a construction site. A fortiori, if it has not seen fit to enact a statute which would compensate a New Jersey resident, New Jersey clearly lacks any interest in assisting a nonresident in obtaining compensation in the same circumstances. Nor does New Jersey have an interest in regulating the conduct of a New York corporation, whether employer or other party defendant.

The concern expressed by the Appellate Division, Third Department, in *Salsman v Barden & Robeson Corp.* (164 AD2d 481, *supra)* is not addressed to the holding in *Calla,* but involves the obverse to the situation presented in the case. The Court objects that New York law would not apply where the employer and the employee are both commonly domiciled in another State and the employee is injured in a fall in New York. The application of the rationale of *Calla* to these facts might indeed result in the courts of this State declining to apply Labor Law § 240 (1) to an action seeking recovery on behalf of a foreign worker employed by a codomiciliary. On the other hand it is not the inevitable outcome.

Consider the following two scenarios involving a worker

who is a resident of New Jersey. If a worker, who has regular employment in this State, is engaged in this State by a New Jersey contractor to perform work in New York City, there is no question that the employment should be governed by the laws of this jurisdiction. Since, in these circumstances, the situs of the tort is the same as the State in which the contract was made, this situation does not present a special case outside the tort choice-of-law criteria stated in *Schultz v Boy Scouts (supra)*.

Where, however, the employee regularly works in New Jersey, for a contractor domiciled in that State, and is sent to New York for the purpose of working on a client's corporate office, the situation is not precisely comparable to *Schultz* because the locus of the tort differs from that of the contract (both with respect to where the contract was entered into and where services are generally performed). Interest analysis, however, as set forth in *Schultz,* suggests that the law of the common domicile should be applied by our courts.

As noted above, New Jersey's interest in imposing vicarious liability to provide compensation to workers injured in falls is demonstrated by an absence of any such legislation in that State. As the majority points out, a New Jersey resident injured in a fall must establish that his employer breached a duty of ordinary care to provide a reasonably safe workplace in order to recover in the New Jersey courts *(see, Sanna v National Sponge Co.,* 209 NJ Super 60, 506 A2d 1258). Therefore, New Jersey's interest cannot be said to be impaired by denying its resident the right to avail himself of the benefit of Labor Law § 240 (1).

From the opposite perspective, New York has no interest in providing a New Jersey resident with a further source of recovery for his injuries; it is New Jersey that has the paramount interest in providing a means of recovery for its resident, who might otherwise become a ward of the State *(Calla v Shulsky,* 148 AD2d, *supra,* at 65). Concededly, New York has an interest in the deterrent effect of Labor Law § 240 (1) on future conduct by employers within this State. But that deterrence is considerably attenuated because the provision is applied to an out-of-State contractor and because deterrence is secondary to the statutory allocation of loss, as in the matter on appeal, to a party otherwise without fault in causing the injury *(Brown v Two Exch. Plaza Partners,* 76 NY2d, at 179, *supra; Calla v Shulsky,* 148 AD2d, at 64-65, *supra; Viera v Uniroyal, Inc.,* 142 Misc 2d, at 1105, *supra).*

To apply New York law to every worker injured in a fall in this State without regard to domicile of the parties, as suggested by the Appellate Division, Third Department, in *Salsman (supra)*, defeats the purpose of the choice-of-law criteria endorsed by the Court of Appeals in *Schultz* (65 NY2d, at 201, *supra)*. It operates to encourage forum shopping in the effort to obtain the advantage of our more liberal recovery opportunities, invites criticism that the courts of this State exhibit bias in favor of New York law favoring recovery and impairs mutuality and reciprocity as a result of the inconsistent application of the law of the common domicile *(supra)*. Moreover, it defeats the reasonable expectations of the parties as to the law governing the employment relationship where the employee has been engaged in a foreign State, by an employer domiciled in that State, to perform work primarily within its borders.

I do not share the view, expressed by the Appellate Division, Fourth Department, in *Brewster v Baltimore & Ohio R. R. Co.* (167 AD2d 908, *supra)* and adopted by the majority, that imposing on a defendant vicarious liability created by operation of the law of this State (McKinney's Uncons Laws of NY § 6401 *et seq.)* imposes an extraterritorial standard of conduct. Rather it implicates the interest of New York State, the common domicile of the parties to this litigation, "in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with [this] jurisdiction and to submit themselves to its authority" *(Schultz v Boy Scouts,* at 198, *supra; see also, Rutledge v Rockwells of Bedford,* 200 AD2d 36 [2d Dept] [Dram Shop Act (General Obligations Law § 11-101) applied to out-of-State injury]).

There is no doubt that if this case involved a New Jersey statute which barred recovery by the employee, the New York courts would enforce the provision in a suit between parties commonly domiciled in that State *(Schultz v Boy Scouts, supra* [New Jersey charitable immunity enforced in suit between New Jersey domiciliaries]). Merely because this case involves a New York statute that provides an additional basis for recovery (as opposed to a foreign statute that limits recovery) does not change the result that New York has a superior interest "in protecting its own residents injured in a foreign State against unfair or anachronistic statutes of that State" *(Schultz v Boy Scouts,* at 199, *supra)*.

Accordingly, the order of the Supreme Court, New York

County (Walter Schackman, J.), entered April 7, 1993, which denied defendant's motion to dismiss plaintiff's cause of action predicated upon violations of Labor Law §§ 200 and 240, should be modified, on the law, to the extent of dismissing only so much of the action as is predicated on Labor Law § 200 and, except as so modified, affirmed, without costs.

Ross and NARDELLI, JJ., concur with WALLACH, J.; CARRO, J. P., and RUBIN, J., dissent in a separate opinion by RUBIN, J.

Order, Supreme Court, New York County, entered April 7, 1993, reversed, on the law, without costs, and the complaint dismissed.