[648 NYS2d 101]

Thomas Augello, Appellant-Respondent, v 20166 Tenants Corp. et al., Respondents-Appellants.

NEIC, Inc., Third-Party Plaintiff-Appellant, v Action Industrial Maintenance Systems, Inc., Third-Party Defendant-Respondent.

First Department, October 22, 1996

## APPEARANCES OF COUNSEL

*Paula Schaap* of counsel *(James V. McGovern,* attorney), for appellant-respondent.

*Joseph J. Gulino* of counsel *(Franklin W. Turner,* attorney), for 20166 Tenants Corp. and others, respondents-appellants.

*William J. Burke* of counsel *(Burke & Stone,* attorneys), for NEIC, Inc., third-party plaintiff-appellant.

*Phillip A. Tumbarello* of counsel *(Kevin J. Sullivan* on the brief; attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

NARDELLI, J.

Plaintiff, Thomas Augello, was a 17-year-old New Jersey resident who sustained serious injuries to his hand on July 2, 1992, working on a construction site at a Gap store in New York, when a hoist became disconnected and struck him. At the time of the accident, plaintiff was employed by third-party defendant, Action Industrial Maintenance Systems, Inc. (Action), a New Jersey corporation. He brought this action against defendants 20166 Tenants Corp. and 66th and Third Avenue, L. P., as the owners of the work site, defendant The Gap, Inc., as lessor of the work site, defendant Fisher Development, Inc., as general contractor and defendant NEIC, Inc. as the subcontractor. Defendant NEIC, a New Jersey corporation, brought the third-party action against Action for contribution and the other defendants brought cross claims for indemnification against Action also.

At the time plaintiff was injured in New York, third-party defendant Action was insured under a workers' compensation and employer's liability insurance policy issued by a New Jersey insurance company and, after the accident, plaintiff applied for and received workers' compensation benefits pursuant to this policy. The law of New Jersey does not permit contribution actions against an employer where workers' compensation benefits have been paid.

Accordingly, prior to the deposition of any of the defendants, Action moved for summary judgment dismissal of the third-

party action and all cross claims and counterclaims against it, on the basic ground that New Jersey law barred contribution by it. The IAS Court granted that motion finding the considerations in *Calla v Shulsky* (148 AD2d 60) controlled. That case rejected the *lex loci delicti* and gave Labor Law § 240 an extraterritorial application to an accident which occurred in New Jersey since the parties in *Calla* were all domiciliaries of New York (*but see, Zangiacomi v Hood*, 193 AD2d 188, 193 ["The circumstances in *Calla* were unusual and, as *Calla* itself recognized, the case has limited application * * * its precedential value should be restricted to a precisely similar fact pattern"]). The IAS Court reasoned that NEIC and Action are both New Jersey corporations and the plaintiff was a New Jersey resident who was "more regularly employed in New Jersey and more likely to become a ward of that State," and, therefore, New Jersey law was controlling.

While the IAS Court found that New Jersey's significant State interest in shielding its employers from third-party contribution suits outweighed New York's general principles permitting contribution, we believe that the court misinterpreted the principles of law involved and the significant State interests which are in conflict in this case.

Initially, we note that the Court of Appeals has, indeed, found that "contribution is not a deeply rooted tradition of the common weal (*Loucks*, 224 NY, at 111), having been introduced into our law only relatively recently" (*Cooney v Osgood Mach.*, 81 NY2d 66, 79). Thus, the Court in *Cooney*, a case where a Missouri resident was injured *in Missouri* and brought a product liability action in New York, held that Missouri's workers' compensation law shielding employers from contribution claims would take precedence over the New York *Dole v Dow Chem. Co.* (30 NY2d 143) contribution rule codified in our CPLR. The Court specifically noted in *Cooney*, however, that Missouri law should apply because "the accident occurred in Missouri, and unavailability of contribution would more closely comport with the reasonable expectations of both parties in conducting their business affairs" (*supra,* at 78). In our case, the accident occurred in New York, and the contracts were executed in New York for construction work to be performed in New York. Thus, the parties would "reasonably expect" that New York law would apply.

The Court of Appeals, before *Cooney*, found that when there is a conflict of laws issue, and the conflicting rules involve the appropriate standards of conduct, the law of the place of the

tort " 'will usually have a predominant, if not exclusive, concern.' " (*Schultz v Boy Scouts,* 65 NY2d 189, 198.) This is so "because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction." *(Supra,* at 198.)

In a clear statement of the difference between conduct regulating and loss-allocating rules, the Court of Appeals in *Padula v Lilarn Props. Corp.* (84 NY2d 519, 522) thereafter wrote:

"Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring. 'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders' (*Cooney v Osgood Mach.,* 81 NY2d 66, 72, *supra).*

"Loss-allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs, such as charitable immunity statutes (*e.g., Schultz v Boy Scouts, supra*), guest statutes (*e.g., Dym v Gordon,* 16 NY2d 120), wrongful death statutes (*e.g., Miller v Miller,* 22 NY2d 12), vicarious liability statutes (*e.g., Farber v Smolack,* 20 NY2d 198), and contribution rules (*e.g., Cooney v Osgood Mach., supra*). Where the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply (*see, Cooney v Osgood Mach., supra,* at 73 * * *)."

The Court in *Padula* then went on to expressly hold, in that case, where the parties *shared a common domicile,* that the relevant Labor Law provisions, sections 240 and 241, embody both conduct-regulating and loss-allocating functions, but held that "sections 240 and 241 of the Labor Law are primarily conduct-regulating rules, requiring that adequate safety measures be instituted at the worksite". *(Supra,* at 523.)

Application of these principles to the case before us impels the conclusion that since Labor Law § 240 is the gravamen of plaintiff's claim and also since the parties *do not* share a common domicile that the conduct-regulating nature of the statute pleaded necessitates that the law of this jurisdiction apply allowing third-party plaintiff and defendants to counterclaim and cross-claim against Action for contribution even though such actions would be barred in New Jersey.

The apparent dispute in this case arises from the bifurcated nature of the plaintiff's claims as contrasted with the defendants' claims *inter se*. The plaintiff's action against defendants is clearly governed by New York law, i.e., the conduct-regulating rules set forth in Labor Law § 240. If this is so, then the obligations and liabilities of the defendants vis-à-vis each other should also be governed by New York law. The third-party action is by a New Jersey corporation (NEIC) against another New Jersey corporation (Action) for indemnity and contribution. It is understandable, therefore, that the IAS Court would choose to apply the loss-allocating rules relating to contribution to this third-party action. However, this also has the effect of dismissing the third-party cross claims by the New York domiciliaries and foreign corporations authorized to do business in New York against Action for indemnity and contribution. In so doing, it eviscerates the purpose and operation of the Labor Law in regulating conduct at the construction site. Depriving owners and general contractors, who are New York domiciliaries and who have imposed upon them strict and vicarious liability under a New York statute for a tort occurring in New York, of their right to indemnity against the actual tortfeasor attenuates, if it does not violate, the conduct-regulating rules set forth in Labor Law § 240. Even before the seminal case of *Dole v Dow* (*supra*), a defendant who was liable in a vicarious or derivative manner could implead the actual tortfeasor (*see*, 48 Siegel's Prac Rev, at 3-4 [Sept. 1996]).

Parenthetically, we note that the enactment of the Omnibus Workers' Compensation Reform Act of 1996 (L 1996, ch 635), which took effect on September 10, 1996 and limits the tort liability of employers by restricting contribution claims against them to cases of "grave injury" (*id.*, § 1), has no effect on the issues raised before us at this time.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered November 14, 1994, which granted third-party defendant Action Industrial Maintenance Systems, Inc.'s motion for summary judgment dismissing the third-party complaint and all cross claims and counterclaims, should be reversed, on the law, without costs or disbursements, and the motion denied.

Rosenberger, J. P., Wallach, Rubin and Mazzarelli, JJ., concur.

Order, Supreme Court, New York County, entered November 14, 1994, reversed, on the law, without costs or disbursements, and the motion for summary judgment dismissing the third-party complaint and all cross claims and counterclaims denied.