Brenda **MIHALIC**, as Personal Representative of the Estate of Ryan L. Johnson, Deceased, Individually and on Behalf of Next of Kin, Plaintiffs,

v.

**K–MART OF AMSTERDAM, N.Y.** Distribution Center, Inc.; H & M Company, Inc.; Siemens Dematic Corp.; and R.L. Torbeck Industries, Inc., Defendants.

Siemens Dematic Corp., Third–Party Plaintiff

v.

Warehouses By Design, Inc., Third–Party Defendant.

R.L. Torbeck Industries, Inc., Third–Party Plaintiff,

v.

Warehouses By Design, Inc., Third–Party Defendant.

H & M Company, Inc., Third–Party Plaintiff,

v.

Warehouses By Design, Inc., Third–Party Defendant.

No. 5:03–CV–674.

United States District Court, N.D. New York.

March 29, 2005.

an, was killed on the job at a New York work site while employed by a Pennsylvania company, third-party defendant Warehouse by Design, Inc. ("WBD" or "third-party defendant").

Defendant KMart of Amsterdam, N.Y. Distribution Center, Inc. ("KMart")[1] owns and operates a distribution center in Florida, New York and hired defendant H & M Co., Inc. ("H & M" or "third-party plaintiff") as the general contractor to upgrade the warehouse premises. KMart also contracted with defendant Siemens Dematic Corp. ("Seimens" or "third-party plaintiff") to install a conveyor system. Siemens subcontracted out part of the installation of the conveyer system to defendant R.L. Torbeck Industries, Inc. ("Torbeck" or "third-party plaintiff"), which further subcontracted out part of the installation work to Johnson's employer WBD.

Plaintiff brings suit against KMart and its contractors as entities with control over the premises on which Johnson was injured. Plaintiff does not sue Johnson's employer WBD in this action, but defendants have impleaded WBD under both contract theories and common law indemnification and contribution theories.

In the instant motion, WBD moves for summary judgment against all four third-party plaintiffs on the grounds that Pennsylvania law bars the claims against it. Third-party plaintiffs oppose. Oral argument was heard by video conference between the Utica and Albany federal courthouses on December 15, 2004. Decision was reserved.

Broder and Reiter (Jonathan C. Reiter, Esq., Stephen Gibson Skinner, Esq., of Counsel), New York City, for Plaintiff.

Donohue, Sabo, Varley & Huttner, LLP (Alvin O. Sabo, Esq., Kathleen L. Werther, Esq., of Counsel), Albany, NY, for Defendant, K–Mart and Defendant and Third–Party Plaintiff, R.L. Torbeck Industries, Inc.

Brennan, Rehfuss & Liguori, PC (Stephen J. Rehfuss, Esq., of Counsel), Albany, NY, for Defendant and Third–Party Plaintiff, H & M Company.

Wilson Elser Moskowitz, Edelman & Dicker, LLP (Robert W. Littleton, Esq., Bruce D. Ainbinder, Esq., of Counsel), New York City, for Defendant and Third–Party Plaintiff, Siemens Dematic Corp.

Thomas M. Bona, Esq. (Stephanie Bellantoni, Esq., of Counsel), White Plains, NY, for Third–Party Defendant, Warehouse by Design, Inc.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

This is a wrongful death and survival action brought by Ryan Johnson's ("Johnson") personal representative, Brenda Mihalic ("plaintiff"). Johnson, a Pennsylvani-

---

**1.** After plaintiff filed this action, Torbeck, Seimens, and H & M answered and subsequently filed third-party complaints against WBD. KMart's claims against WBD were filed as amendments to its answer to WBD's complaint. (Docket No. 38, KMart's Second Amended Answer, Third, Fourth and Fifth Cross-claims) Despite this procedural difference, in order to ease the discussion, all four defendants will be collectively referred to throughout this decision as third-party plaintiffs.

## II. *FACTS*

On May 10, 2002 Johnson was installing a pipe railing on the mezzanine decking at KMart's distribution center in Florida, New York. Johnson, a welder, fell approximately 30 feet to the floor sustaining injuries which led to his death. Plaintiff alleges that as owner, general contractor and contractors with control over the project, defendants failed to meet their statutory duties to provide or ensure the application of proper safety measures which would have prevented Johnson's injuries and subsequent death. The underlying cause of action is brought pursuant to New York Labor Law which imposes scaffolding and related safety device requirements on owners and contractors during construction projects. Third-party plaintiffs argue that they will be held strictly and vicariously liable under N.Y. Labor Law §§ 240 and 241 for WBD's actual negligence.

WBD's work in New York was governed by its April 2002 contract with Torbeck wherein WBD would install part of a conveyor belt system and some metal decking. Joseph Hendricks ("Hendricks") is the president of WBD and negotiated and signed the contract that Torbeck drafted. As noted above, WBD is a Pennsylvanian corporation. Torbeck is an Ohio corporation and the contract was to be performed in New York. The contract requires WBD to indemnify Torbeck for

> damages, costs, attorney's fees and expense on account of (a) injury to, or death of, any person or damage to any property, including our employees and property, occurring at the result of fault or negligence of the contractor, the contractor's subcontractor, agents, servants, or employees in connection with the work covered by the agreement, and (b) injury to any employee by the contractor during the performance of such work and any death resulting therefrom.

(Docket No. 7, Third–Party Complaint ¶ 7). WBD was also required to obtain a General Liability Insurance policy. The contract provides that disputes will be settled through arbitration in Ohio under Ohio law and lists KMart as the customer for which the services are to be performed. *Id.* at Ex. A, p 2.

Finally, the contract states that "[t]he contractor [WBD] shall be fully insured throughout this contract against liability under the Worker's Compensation Act of the State in which the work is to be performed." *Id.* at Ex. A, p 1.

N.Y. Workers' Comp. Law § 11 provides:

> An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a grave injury.

> Grave injury means only one or more of the following: death, ...

The workers' compensation law of Pennsylvania, the domicile of both Johnson and WBD, is an exclusive remedy scheme which does not contain a grave injury exception to its bar against third-party suits. It provides:

> (b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third

party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 Pa. Cons.Stat. 481 (1990).

Defendant Seimens is the New York corporation that hired Torbeck to help with part of the conveyor system that it was hired to install for KMart. Seimens claims WBD was contractually obligated to indemnify Seimens against injuries sustained as a result of WBD's agents and/or their actions. Seimens adds that it was either to be named as an additional insured under WBD's General Liability Insurance policy, or is at least a third-party beneficiary to the contract WBD had with Torbeck. Seimens' safety manual requires WBD to comply with the state's safety regulations at construction sites. Such regulations include N.Y. Labor Law §§ 200, 240, and 241—the regulations at issue in the underlying complaint—regarding scaffolding and related safety devices or measures. Hendricks, on behalf of WBD, signed an acknowledgment that he reviewed the Seimens manual.

H & M, incorporated under the laws of Tennessee, is described as the general contractor on the warehouse project. It contracted to construct the outer shell of the warehouse. (Docket No. 61, H & M's Reply to Statement of Material Facts, ¶ 10). H & M claims that it is entitled to apportionment, contribution and/or and indemnification against WBD because, as a subcontractor, WBD was contractually obligated to indemnify H & M against injuries sustained as a result of WBD agents and/or their actions (Docket No. 53, Third–Party Complaint of H & M, ¶ 9).

KMart, a Michigan corporation, claims it is entitled to apportionment of any damages awarded, contractual indemnity as a third-party beneficiary to the Torbeck contract, and further that it was to be named as an additional insured on the WBD's General Liability Insurance policy.

As motion practice proceeded, the co-defendants all cross-claimed each other, and WBD filed further counterclaims and cross-claims against the defendants.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Silver v. City Univ., 947 F.2d 1021, 1022 (2d Cir.1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gibbs–Alfano v. Burton, 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]um-

mary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997). The Court is "to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian,* 988 F.Supp. 631, 638 (S.D.N.Y.1997) (citing *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505).

**B. New York Choice of Law**

The issue for determination is which state's workers' compensation law applies, New York's or Pennsylvania's. N.Y. Workers' Comp. Law § 11 would allow the third-party claims, but Pennsylvania's Workers' Comp. Law, 77 Pa. Cons.Stat. § 481, would bar them and relieve WBD of liability. WBD asserts that Pennsylvania's law governs this action as both Johnson and WBD are from Pennsylvania, Pennsylvania law governs their employment relationship, and WBD did not expect New York worker's compensation law—and its exception to suits for grave injuries—to apply to its contract in New York. Third-party plaintiffs argue separately, but essentially, that New York law applies be-cause the contract between Torbeck and WBD provides for workers' compensation coverage according to the laws of New York, the injury occurred in New York, and the application of Pennsylvania's law in combination with New York's Labor Laws would unfairly affect owners and contractors who contract in New York.

**1. Applicable Choice of Law Principles**

■ A federal court, sitting in diversity, resolves conflict-of-law questions according to the choice-of-law rules of the state in which it sits. *IBM v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir.2004); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ When considering tort actions, New York applies an interest analysis.[2] *Babcock v. Jackson,* 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (N.Y. 1963); *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 196–97, 491 N.Y.S.2d 90, 480 N.E.2d 679 (N.Y.1985). "[T]he law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied." *Fiske v. Church of St. Mary of the Angels,* 802 F.Supp. 872, 877 (W.D.N.Y.1992) (citing *Index Fund, Inc. v. Insurance Co. of North America,* 580 F.2d 1158 (2d Cir. 1978)). "As part of interest analysis, the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation." *Aro-Chem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir.1992). "Generally, when the laws in conflict are conduct regulating, the law of the locus jurisdiction applies." *Id.*

---

**2.** For a helpful overview of the evolution in New York conflict-of-laws principles see *The "Conflict of Laws Revolution" in New York— and Where did it Leave Us* by Peter E. Herzog. 50 Syracuse L.Rev. 1279 (2000).

Loss allocating laws "prohibit, assign or limit liability after the tort occurs." *Schultz,* 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679. "Where the conflicting rules relate to the allocation of losses resulting from tortious conduct, such as rules limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit, the interest of the locus jurisdiction is less important and is outweighed by the relative interests of the parties in having the law of their domiciles apply to the action." *Fiske,* 802 F.Supp. at 878. When the laws in conflict are loss allocating, the rules articulated in *Neumeier v. Kuehner* direct the application of the law. 31 N.Y.2d 121, 125–26, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). The New York Court of Appeals has held that New York's workers' compensation law is a loss-allocation rule. *Quintana v. Ciba–Geigy Corp.,* 96 Civ. 1301, 1997 WL 160308 (S.D.N.Y. April 3, 1997) (citing *Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 73, 595 N.Y.S.2d 919, 612 N.E.2d 277 (N.Y.1993)). Thus, the *Neumeier* rules will be applied to determine which state's law applies in the instant case. *Cooney,* 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277.

■ The first *Neumeier* rule applies in situations where the parties share a domicile. In such a case, the law of that shared domicile is applied as it has the greatest "interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority." *Cooney,* 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277 (citing *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679).

"The second *Neumeier* rule addresses 'true' conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary." *Cooney,* 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277. In such a case, *Neumeier* requires application of the law of the place of injury. *Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

In cases where the parties are domiciled in different states, a so called split-domicile case, and the respective laws conflict, the third *Neumeier* rule also generally directs application of the law of the place of injury. That law may be displaced, however, if it can be shown that applying another would "advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Cooney,* 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277; *Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

### 2. *The Second Neumeier Rule and defendant Seimens*

■ The second *Neumeier* rule is applicable to Seimens' claims against WBD. "The second rule specifies that if the parties are domiciliaries of different states, and the accident occurs in one of the domiciliary states, the law of that state should be applied in the absence of special circumstances." *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 57 (2d Cir.2000). As the Second Circuit noted, "unlike the third rule, the relevant portions of the second rule are phrased in non-discretionary terms, which unambiguously call for application of locus law." *Barkanic v. General Admin. of Civil Aviation of People's Republic of China,* 923 F.2d 957, 962 (2d Cir.1991).

Seimens action is analogous to the case of *Glunt v. ABC Paving Company Inc.,* 247 A.D.2d 871, 668 N.Y.S.2d 846 (4th Dep't 1998). In *Glunt,* an Ohio resident of an Ohio employer was killed on the job in New York. Glunt brought suit against a New York company which impleaded the

Ohio employer. Despite the fact that Ohio's Worker's Compensation law barred contribution suits where benefits had been paid, the Appellate Division for the Fourth Department allowed the action under New York's workers' compensation law because in the case of irreconcilable interests, the place of the tort governs. *Glunt,* 247 A.D.2d at 872, 668 N.Y.S.2d 846.

·· A straightforward application of the rule requires adoption of New York law. Here, New York law favors its domiciliary. Seimens' third-party claims would survive under New York ·law because its workers' compensation law contains the grave injury exception which applies here and would permit the third-party action. Pennsylvania law favors its domiciliary, the third-party defendant WBD, in barring the claim and relieving it of liability. New York law will be applied to Seimens action because the competing laws favor their domiciliaries, thus the law of the place of injury is applied. *Cooney,* 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277. WBD's motion to dismiss Seimens' third-party complaint will be denied.

### 3. The Third Neumeier Rule and defendants Torbeck, H & M and KMart

■ WBD, Torbeck, H & M and KMart are all from different jurisdictions; Pennsylvania, Ohio, Tennessee, and Michigan respectively. Under the third *Neumeier* rule, for split-domicile cases where the loss allocating laws conflict,

> the [normally] applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.

*Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454. (citing Restatement (Second) Conflict of Laws §§ 146, 159). Accordingly, the interest analysis required here is a two part inquiry. First, beginning with the presumption that New York law applies, Pennsylvania's law will only be applied if WBD can demonstrate that the relevant substantive law will still be advanced, or at least will not be impaired, if New York law is displaced. This is generally done by showing that New York's interest just isn't significant enough to be offended by application of the other state's law, which has a more compelling interest in having its law applied.

Second, the rule relates the law's concern with the predictability of the multistate system. Litigants, as business people, must be able to plan their affairs with some level of certainty when engaging in interstate commerce. Thus, meeting the reasonable expectations of the parties is also a predominant consideration in interest analysis. These inquiries will be taken in turn.

### a. Relative interests of the New York and Pennsylvania

WBD argues that Pennsylvania's interest ·in its workers' compensation scheme is greater than New York's interest in its scheme, which would not be greatly impaired if displaced, so Pennsylvania law should be applied. As WBD points out, some courts have taken that position and displaced New York's workers' compensation law in favor of another.

A little background is required to understand the context in which previous courts weighed state interests in their worker's compensation schemes. New York has struck the balance between its interest in maintaining the integrity and/or exclusivity of its worker's compensation scheme and the need for fairness to both injured plain-

tiffs and co-tortfeasers in different places over the years.

■ The purpose of worker's compensation provisions that bar indemnity and contribution actions by third-parties "is to protect employers who contribute to the cost of no-fault protection from workplace injuries from being subjected to lawsuits based on the same injuries, thereby encouraging compliance with the compensation laws and making it practical to pay the premiums."[3] *Thompson v. IBM Corp.*, 862 F.Supp. 79, 81 (S.D.N.Y.1994). Yet, in *Dole v. Dow Chemical Co.*, the Court of Appeals furthered a different—and arguably conflicting—policy when it held that defendants could implead employers and recover an amount proportionate to the employer's share of fault. 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (N.Y.1972).

New York's contribution policy favored a shared responsibility between joint tortfeasors based on findings of negligence and culpability. The apportionment of liability is designed to promote fairness to the third-party plaintiff instead of requiring that party to shoulder the entire cost of damages. This abrogation of employer immunity represented a minority position. In 1994, one court commented that "New York's statutory regime is considered the most favorable to third-party plaintiffs of any state in the United States... [it] stresses the value of fairness above all other considerations and downplays the exclusive liability provisions of the workers' compensation act." *Gutierrez v. Swaim Inc.*, Civ. Act. No. 92–CV–1120, 1994 WL 62843 at *2 (S.D.N.Y. Feb. 23, 1994).

The *Dole* doctrine was opposed because it seemed to place employers "back on the hook" for their employees' injuries, even when the employee had recovered workers' compensation benefits for the same injuries. After much debate, the 1996 Omnibus Workers' Compensation Reform Act of was passed, which substantially changed N.Y. Workers' Comp § 11. As quoted above, this amendment limited third-party actions to cases where a plaintiff alleges grave injuries. In effect, the 1996 legislation moved New York back toward the rule applicable in the majority of states.

In 1994, during the *Dole* era and before the 1996 amendment, the Southern District of New York compared the relative interests of New York and New Jersey in their respective schemes. In *Gutierrez*, a New Jersey resident working for a New Jersey company was injured in New York. *Gutierrez*, 1994 WL 62843 at *1. The employee brought suit against a North Carolina company and that company impleaded the New Jersey employer. New Jersey worker's compensation law barred the suit and New York's allowed it. The court compared New Jersey's interests in maintaining the integrity of its scheme in protecting its employers and New York's interests in basic fairness to litigants and concluded that New Jersey's interest was greater. *Id.* at *3. The court noted New York's minority position in allowing third-party suits for allocation of liability purposes and the emphasis New Jersey places on a strict interpretation of its Workers' Compensation Act. *Id.* New Jersey law was applied.

More recently, in 2002 and after the 1996 amendment, the Western District of New York weighed New York's and Penn-

---

**3.** The court was referring to 28 Mass. Workmen's Compensation Law § 23 which provides that acceptance of compensation constitutes a release of "all claims or demands at common law, if any, arising from the injury." *Thompson*, 862 F.Supp. at 81. Nonetheless, the purpose is well stated as to the worker's compensation schemes generally.

sylvania's interest in application of their respective schemes under the same statutes at issue in this case and found that Pennsylvania had the greater interest. In *Van Dyke v. Columbia Mach., Inc.*, a Pennsylvania resident brought suit in New York against a Colorado corporation which impleaded the Pennsylvania employer. 246 F.Supp.2d 191, 196 (W.D.N.Y.2003). The court held that any interest New York had in protecting contribution and indemnification rights of third parties was no longer relevant considering the 1996 amendment which moved towards exclusivity of the scheme. *Id.* at 197. The court held that "Pennsylvania has a greater interest in protecting its statutory scheme that immunizes employers from indemnification claims than New York has in allowing such claims in the case of a grave injury." *Id.* at 196. Pennsylvania law was applied.

Thus before the 1996 amendment, the fact that New York permitted third-party suits was held to undermine New York's interest in its workers' compensation scheme. After the 1996 amendment limited such suits, it was held that New York had undermined its previous policy balance and apparently its overall interest in its workers' compensation scheme. New York law was declined in each case. *Gutierrez* and *Van Dyke* seem to hold that because New York was willing to compromise the exclusivity of its workers' compensation scheme in order to strike a different balance between it and other policy interests, its interest in application of that scheme, including the exceptions, was of less weight than that of a state which struck the balance differently and omitted the exceptions. This is not an obvious conclusion. If followed to its natural conclusion, the state with the strictest scheme would always have the greater interest in having it enforced. Even if this reasoning

was accepted, it would not extend as far as the instant case.

While it is generally difficult in a conflict-of-laws context to dissect a set of facts and the relevant law into conduct regulating as opposed to loss allocating conflicts, in the context of construction work, regulated in part by New York Labor Laws, it is particularly challenging. The New York Court of Appeals explained that the Labor Law provisions embody both conduct-regulating and loss allocating functions, but are primarily conduct regulating rules. *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 523, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). Thus, New York has expressed its interest in maintaining safety standards at construction sites by adding loss allocation rules as part of its substantive or regulatory law governing construction sites. These loss allocating rules are intertwined with the conduct regulating rules such that they serve the direct purpose of preventing torts within the state. As one court explained: "Labor Law § 240, although a loss-allocating provision, has been described by some lower New York courts as a conduct-regulating provision because it imposes more stringent liability for accidents and hence may have a greater deterrent effect than might flow from liability for negligence law alone." *Thompson*, 862 F.Supp. at 82.

Even though it's actually the compensation laws that conflict here, the substantive and loss allocating labor laws cannot be ignored in the interest analysis. Courts that have weighed New York's interest in its workers' compensation scheme—and thus its exceptions—in the context of cases where the underlying claim is brought pursuant to New York Labor Law §§ 240 and 246 have found New York's interest to weigh heavier in the balance than in the cases discussed above. *Van Dyke* and *Gutierrez* were not cases of alleged negligence on construction sites in New York.

In *Augello v. 20166 Tenants Corp.*, a New Jersey resident employed by a New Jersey corporation was injured working at a construction site in New York. 224 A.D.2d 73, 648 N.Y.S.2d 101 (1st Dep't 1996). Plaintiff sued the owner, general contractor and subcontractor of the project. The subcontractor brought a third party action against the New Jersey employer. New Jersey law would have barred the contribution action because New Jersey worker's compensation benefits had been paid. New York law permitted the action.

*Augello* is actually a second *Neumeier* rule situation because the laws of the respective domiciliaries favored those domiciliaries.[4] Nonetheless, as to the impleaded New York domiciliaries, rather than just note that the respective laws favored the respective domiciliaries and apply the law of the place of injury, the court noted the role that plaintiff's use of Labor Law § 240 played in the defendants or third-party plaintiff's claims. In refusing to dismiss the third-party defendant pursuant to New Jersey law, the court explained that such a dismissal would

> eviscerate[ ] the purpose and operation of the Labor Law [§ 240] in regulating conduct at the construction site. Depriving owners and general contractors, who are New York domiciliaries and who have imposed upon them strict and vicarious liability under a New York statute for a tort occurring in New York, of their right to indemnity against the actual tortfeasor attenuates, if it does not violate, the conduct-regulating rules set forth in N.Y. Lab. Law § 240.

*Augello*, 224 A.D.2d 73, 648 N.Y.S.2d 101.

In this case the third-party plaintiffs, as contractors on a New York construction site, are subject to the same liability rules as the impleaded New York defendants in *Augello*, and the substantive law of New York would likewise be "attenuated" or impaired if Pennsylvania law was applied. As the *Augello* court explained, "since Labor Law § 240 is the gravamen of plaintiff's claim and also since the parties do not share a common domicile[,] the conduct-regulating nature of the statute pleaded necessitates that the law of this jurisdiction apply." *Augello*, 224 A.D.2d at 76, 648 N.Y.S.2d 101.

Thus under the interest analysis so far, it is not persuasive that Pennsylvania should be deemed to have a greater or more compelling interest here simply because it made a policy choice to maintain stricter exclusivity in its workers' compensation scheme. Furthermore, it must be considered that New York has a great interest in maintaining safety at construction sites. The loss allocation rules of the relevant substantive law on which plaintiff bases her action results in unfairness to primary contractors who would be held liable for the torts of others if New York law is displaced. But it is also noted that Pennsylvania's interest in displacing New York law is not compelling considering that third-party actions like this one may be permitted under its own scheme.

In *Fiske*, a Pennsylvanian, employed by a Pennsylvania company, was injured working at a construction site in New York. 802 F.Supp. 872 (W.D.N.Y.1992). Plaintiff brought suit against the owner and general contractor. The defendants in turn commenced a third-party action against the Pennsylvania employer(s). The *Fiske* court, allowed the third-party

---

4. The *Augello* court allowed the dismissal of the impleaded New Jersey corporation because it shared a domicile with the defendant and could expect that New Jersey law would apply between them.

action against the employer. After emphasizing the role of the N.Y. Labor Law § 240 in the case and this state's interest in maintaining safe construction sites in New York, the court stated that the third-party action didn't offend Pennsylvania's workers' compensation scheme anyway.

> Pennsylvania's worker's compensation law permits an action by a third party against an employer if liability for damages, contribution or indemnification was expressly provided for in a written contract entered into between the parties alleged to be liable prior to the date of the occurrence giving rise to the action. See, Pa. Workmen's Compensation Law § 481(b) (Purdon 1990).

*Fiske,* 802 F.Supp. at 881. The same statute applies here and WBD's contract provides for indemnification and/or contribution, at least to benefit Torbeck and perhaps the other third-party plaintiffs as third-party beneficiaries. The validity and scope of the actual contract(s) need not be determined at this time, it is enough for the purposes of the interest analysis to note that Pennsylvania law allows third-party actions where the parties have contracted to indemnify the primary contractors as the third-party plaintiffs have alleged here.

Having determined that displacing New York law offends the relevant substantive law and, in any regard, that Pennsylvania's interest is not compelling enough to displace it, the interest analysis turns to whether application of New York law furthers or upsets the reasonable expectations of the parties.

#### b. *Reasonable expectations*

Third-party defendant WBD argues that a focus on the reasonable expectations of the parties will lead to the application of Pennsylvania law because none of the parties could have reasonably expected New York's workers' compensation law to apply.

First, it must be noted that the reasonable expectation at issue here is an objective expectation based on a reasonable interpretation of the facts and circumstances of the contracts and business dealings at issue. WBD's president, Hendricks, has testified that he did not believe he was foregoing the protections of Pennsylvania's scheme in agreeing to provide workers' compensation in accordance with New York's law. This personal and subjective understanding cannot be dispositive of the expectation issue. Such a view risks reducing conflict-of-laws analysis to choosing between the individual perceptions of the parties involved. No authority has been presented to support such an approach.

WBD argues against application of New York law in discussing the reasonable expectations of the parties because on the instant facts no *one* state, including New York, has a compelling interest in the action and could expect its law to apply. WBD notes that New York, Pennsylvania, Ohio and Tennessee domiciliaries are involved. Torbeck's contract with WBD refers to Ohio law, but several of the relationships at issue are not memorialized by contract expressing party expectations as to choice of law. This list of jurisdictions in and of itself points to the application of New York or locus law. The *Cooney* court explained: "It is implicit in the second and third *Neumeier* rules that:

> [a]ssuming that the interest of each State in enforcement of its law is roughly equal... the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which [the] parties have purposefully associated themselves in a significant way. Moreover, locus is a neutral factor, rebutting an inference that the forum State is merely protect-

ing its own domiciliary or favoring its own law."

*Cooney,* 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277 (N.Y.1993) (citations omitted).

WBD argues that the cases relied on above where the courts applied New York law—*Augello* and *Fiske*—are distinguishable because the impleaded third-party defendants had different relationships with New York than WBD had, which would have led them to reasonably expect New York to apply.

WBD argues that *Augello* is distinguishable because the impleaded companies were from New York, the contracts were executed in New York, thus it would have been reasonable to for the employer to expect New York law to apply. Here, WBD is a foreign corporation which contracted with Torbeck by fax. In *Fiske,* the court noted that Fiske's expectations should have been that New York law would apply because the impleaded Pennsylvania employer "was specifically incorporated in New York for purposes of handling Fiske's construction contracts in New York." *Fiske,* 802 F.Supp. at 876.

It's true that those particular factors are absent here, but there are others which would lead the parties to expect the application of New York law. The parties all sent their employees into New York to work. The contract specifically stated that WBD must provide workers' compensation insurance according to New York law. WBD was issued and acknowledged receipt of a Seimens safety manual which referred to compliance with the laws and regulations of the state of performance.

WBD also points to the *Gutierrez* court's decision to displace New York law based on reasonable expectations of the parties. *Gutierrez,* 1994 WL 62843 at *4. That court emphasized that the impleaded parties had chosen to incorporate in states that restricted such suits and "therefore fairness dictates" that the expectation that the restriction would apply elsewhere should be protected. *Gutierrez,* at *4. This reasoning cannot be followed. Even assuming such considerations play a role in a corporation's choice of state of incorporation, the court does not give an explanation as to why its more reasonable, absent an express agreement, to expect to take your law with you into another state as opposed to expecting to follow that state's law when working there. On that point, WBD argues that Torbeck could not have expected New York law to apply because the contract it drafted called for dispute resolution according to Ohio law in Ohio. This argument is rejected because the contract more particularly points to New York law when referring to workers' compensation laws.

The reasonable expectation of the parties would have been that New York law would apply.

## IV. CONCLUSION

Under New York's conflict-of-law jurisprudence for tort conflicts, and the requisite interest analysis for conflicting loss allocating rules, New York's workers' compensation law applies here and permits the third-party actions by H & M, Seimens and Torbeck, as well as KMart's counterclaim.

Accordingly, it is

ORDERED that Third-party defendant WBD's motion for summary judgment is DENIED.

IT IS SO ORDERED.